[No. 12982–1–I.    Division One.    June 18, 1984.]

THE CITY OF EVERETT, *Respondent,* v. DOUGLAS MOORE, *Petitioner.*

*Raymond H. Thoenig, Elizabeth K. Selleck,* and *Eric J. Nielsen* of *Washington Appellate Defender Association,* for petitioner.

*Bruce Jones, City Attorney,* and *Michael E. Weight, Assistant,* for respondent.

*G. Richard Hill* on behalf of American Civil Liberties Union, amicus curiae.

WILLIAMS, J.—Douglas Moore was charged in Everett District Court with harassment, in violation of Everett Municipal Code 10.24.060. After trial to the court, sitting without a jury, he was found guilty and appealed to the Snohomish County Superior Court which affirmed but remanded the cause for resentencing. This court granted discretionary review.

Moore was formerly married to Jeanna Ruuth, resulting in a daughter, Shannon. After they were divorced, Jeanna married Evan Ruuth with Shannon living in that household. Between December 12 and 24, 1981, Moore made several threatening telephone calls to the Ruuths and on the 24th, Christmas Eve, called again, demanding to see his daughter. When Ruuth refused, Moore stated that he would see his daughter "no matter what anybody says," greatly upsetting Ruuth.

Moore was charged with and found guilty of harassment, defined as follows:

A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he: . . .

(3) Communicates with a person, anonymously or otherwise, by telephone, mail or other form of written communication, in a manner likely to cause annoyance or alarm; or

(4) Engages in a course of conduct that alarms or seriously annoys another person and which serves no legitimate purpose.

EMC 10.24.060(A). He challenges these subsections as being unconstitutionally vague or overbroad.

There is a recognized difference between "vagueness" and "overbreadth":

"Vagueness" goes to the question of procedural due process, *i.e.,* whether a statute provides fair notice, measured by common practice and understanding, of that conduct

which is prohibited and whether there are proper standards for adjudication. *Grayned v. Rockford,* [408 U.S. 104, 108, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972)]; *State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 600, 512 P.2d 1049 (1973); *State v. Oyen,* 78 Wn.2d 909, 480 P.2d 766 (1971), *judgment vacated and case remanded on other grounds,* 408 U.S. 933 (1972). Impossible standards of specificity are not required. On the other hand "overbreadth" goes to the question of substantive due process, *i.e.,* whether the statute in question is so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well.

*Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975).

*Webster's Third New International Dictionary* 87 (1976) defines "annoyance" as:

the act of annoying or of being annoyed . . . the state or feeling of being annoyed: VEXATION, IRRITATION . . . a source of vexation or irritation: bothersome disturbance: NUISANCE . . .

and "alarm" is defined in *Webster's,* at 48 as:

to rouse to action: urge on . . . to call to arms . . . to arouse to a sense of danger: put on the alert . . . to strike with fear: fill with anxiety as to threatening danger or harm . . . to keep in excitement or commotion: DISTURB . . .

The ordinance proscribes communication by telephone or in writing or a course of conduct causing annoyance or alarm. It is apparent that the ordinance can be applied to constitutionally protected speech. *See Lewis v. New Orleans,* 415 U.S. 130, 134, 39 L. Ed. 2d 214, 94 S. Ct. 970 (1974). A discussion of any political, social, economic, philosophic or religious topic might well vex, irritate or bother the listener. In addition, the public is constantly being put on the alert with the disastrous effects of everything from vitamin deficiencies in the blood to nuclear obliteration. In all of these instances, the intent may well be to either alarm or annoy to get peoples' attention. And such alarms are often legitimate; sounding the fire tocsin is the purest example.

The people of Everett must not live in the continual fear that something they say to another might bother the listener to the point of invoking the ordinance. Free speech may best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions the way they are, or even stirs people to anger. *Cox v. Louisiana,* 379 U.S. 536, 551–52, 13 L. Ed. 2d 471, 85 S. Ct. 453 (1965).

In *Bolles v. People,* 189 Colo. 394, 541 P.2d 80 (1975) the Colorado Supreme Court declared unconstitutionally overbroad a statute virtually identical to subsection (3).[1] Bolles was charged under the statute after mailing antiabortion brochures containing color photographs of aborted fetuses. The court concluded that

> if unsettling, disturbing, arousing, or annoying communications could be proscribed, or if they could only be conveyed in a manner that would not alarm, the protection of the First Amendment would be a mere shadow indeed.

*Bolles v. People,* at 398. Like the Colorado court, we believe this statutory language simply goes too far.

■ The City unquestionably has a legitimate and substantial interest in protecting its residents from fear and abuse at the hands of persons who employ the telephone to torment others, *United States v. Lampley,* 573 F.2d 783, 787, 50 A.L.R. Fed. 525 (3d Cir. 1978), and in protecting the privacy of its residents' homes from the intrusion of unwanted telephone calls, *State v. Elder,* 382 So. 2d 687, 692 (Fla. 1980). But, the least drastic means to achieve these purposes must be used. *Shelton v. Tucker,* 364 U.S. 479, 488, 5 L. Ed. 2d 231, 81 S. Ct. 247 (1960). Subsection (3) is not limited to telephone calls, it is not limited to intrusions into the home, and, most important, it is not

---

[1] Colo. Rev. Stat. § 18–9–111(1)(e) (1973) provided:

"(1) A person commits harassment if, with intent to harass, annoy, or alarm another person, he:

" . . .

"(e) Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail, or any other form of communication, in a manner likely to harass or cause alarm: . . ."

limited to communications which abuse the listener "in an essentially intolerable manner." *See Cohen v. California,* 403 U.S. 15, 21, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971). Subsection (3) does not have the "precision of regulation" required by the First Amendment. *NAACP v. Button,* 371 U.S. 415, 438, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963). Thus, the overbreadth of subsection (3) is both real and substantial. *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973).

■ A penal statute is unconstitutionally vague if it does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983).

Subsection (4) does not draw a reasonably clear line between the kind of annoying conduct which is criminal and that which is not. For example,

> people who consistently appear late for appointments engage in a course of conduct which alarms or seriously annoys others for no legitimate purpose. The effect of a series of obscenely threatening telephone calls could be similarly described. It is inconceivable that the legislature could have intended the former case to be a crime, but entirely conceivable that the latter case could be considered criminal, yet the statute describes both offenses.

*State v. Sanderson,* 33 Or. App. 173, 177, 575 P.2d 1025, 1027 (1978) (holding as unconstitutionally vague a statute identical to EMC 10.24.060(A)(4)).

Moreover, it has been observed that:

> Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, "men of common intelligence must necessarily guess at its meaning." *Connally* v. *General Construction Co.,* 269 U. S. 385, 391.

*Coates v. Cincinnati,* 402 U.S. 611, 614, 29 L. Ed. 2d 214, 91 S. Ct. 1686 (1971).

Nor does subsection (4) establish reasonably clear guidelines for law enforcement officials and triers of fact to prevent arbitrary and discriminatory enforcement. The terms "seriously" and "no legitimate purpose," while possibly showing the drafter's recognition of this problem, do not distinguish habitual tardiness from obscene telephone calls. Under the language of subsection (4), policemen, prosecuting attorneys, judges and juries are permitted to pursue their personal predilections in enforcing the law. *Smith v. Goguen,* 415 U.S. 566, 575, 39 L. Ed. 2d 605, 94 S. Ct. 1242 (1974).

Because subsection (3) is unconstitutionally overbroad and subsection (4) is unconstitutionally vague, Moore's conviction is reversed.[2]

CORBETT, A.C.J., and RINGOLD, J., concur.

---

[2]The City has not suggested a narrowing construction of subsection (3) or subsection (4) which would save them from constitutional infirmity. *See Dombrowski v. Pfister,* 380 U.S. 479, 490–91, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965). Nor could we narrow the scope of this ordinance without perverting its purpose or judicially rewriting it. *See Aptheker v. Secretary of State,* 378 U.S. 500, 515, 12 L. Ed. 2d 992, 84 S. Ct. 1659 (1964).