[No. 35720-4-I.   Division One.   March 11, 1996.]

THE CITY OF SEATTLE, *Respondent*, v. RUSSELL ALLEN, *Petitioner.*

---

[38]*Gaines*, 122 Wn.2d at 511-13.

*Dimitri L. Iglitzin* of *Public Defender Association*, for petitioner.

*Mark H. Sidran, City Attorney*, and *Richard E. Greene, Assistant*, for respondent.

AGID, J. — Russell Allen was convicted of two counts of misdemeanor harassment in violation of the Seattle Municipal Code § 12A.06.040(A)(2)(a), which prohibits threat-

ening to "cause bodily injury in the future" to another person. Allen contends there is insufficient evidence to uphold his conviction because the prosecution only produced evidence of threats to cause immediate injury, not to cause injury "in the future." We agree and reverse.

## FACTS

Robert Sauget was the early morning cashier at the Capitol Hill Shoprite on September 9, 1992. Another employee, Norman Chandler, was in the back of the store, stocking the shelves. Around 4 A.M., Allen and a companion entered the store. Allen approached Sauget from behind, grabbed him around the throat with his left arm and shoved something in his back. Although one witness testified he saw Allen with a gun, it turned out that he was not armed and was using his finger against Sauget's back. Sauget testified that Allen was "hollering obscenities and [yelling that he wanted] the police there." There were a number of customers in the store. Two of them ran to the back and tried to break an office window in an effort to escape. Allen yelled at the others to take what they wanted and get out of the store. Several customers fled with beer and cigarettes.

Chandler emerged from the back of the store to find out what the noise was about. As he walked towards the front of the store, he saw Allen holding Sauget around the neck. Allen was screaming that he "had a gun, he was going to shoot" and asked Chandler "if [he] wanted to play hero." Chandler said no, and Allen told him to get on the ground. Allen's companion was nearby and pointed to the place on the ground where he wanted Chandler to sit. At trial, the prosecution asked Chandler if Allen said anything else to him. Chandler testified the only other thing Allen said was that "he was going to shoot us if we didn't do what we was told." Chandler sat down on the floor and stayed there until the police arrived. He watched Allen "muscle" Sauget towards the front door and his companion run down the beer aisle, grab a half case of beer and run

outside. Allen told his companion to "get that beer back in the store" because he didn't want to have a theft charge against him.

Outside the store, Allen forced Sauget to the ground and placed a foot on him. He then grabbed Sauget by the throat and took him back into the store. He told Sauget to open the till so the store alarm would sound and alert the police. Sauget explained that he would need to clear the till first and told Allen that if he wanted the police to come, Sauget could call 911. Allen took Sauget over to the phone and had him call 911 to report that the store was being robbed. Allen forced Sauget outside again and put him face down on the ground. Sauget testified that the following exchange took place between them:

> Outside he threatened to shoot me. And I asked him why. And he said, "Well, you weren't doing what I told you to do." And I said "What are you talking about." And he said, "Well, you didn't get the cops here."

He then turned around and sat on Sauget's back "like he was just waiting." The police arrived shortly and took Allen and his companion into custody without incident.

By amended information, the City charged Allen with one count of harassment and one count of assault on Sauget and one count of harassment against Chandler. The jury returned a guilty verdict on all three charges. Allen appealed his conviction for the harassment charges to the King County Superior Court. He did not challenge his conviction on the assault charge. We accepted discretionary review of the superior court order upholding his conviction.

## DISCUSSION

In reviewing the sufficiency of the evidence to uphold a criminal conviction, "the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State*

*v. Joy*, 121 Wn.2d 333, 338, 851 P.2d 654 (1993). A challenge to the sufficiency of the evidence admits the truth of the prosecution's evidence. *State v. Barrington*, 52 Wn. App. 478, 484, 761 P.2d 632 (1988), *review denied*, 111 Wn.2d 1033 (1989). " '[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.' " *Joy*, 121 Wn.2d at 339 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

The City charged Allen under SMC § 12A.06.040. It provides:

A. A person is guilty of harassment if:

1. With the intent to annoy or alarm another person he/she repeatedly uses fighting words or obscene language, thereby creating a substantial risk of assault; or

2. Without lawful authority, the person knowingly threatens:

a. To cause bodily injury *in the future* to the person threatened or to any other person; or

b. To cause physical damage to the property of a person other than the actor; or

c. To subject the person threatened or any other person to physical confinement or restraint; or

d. Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and

e. The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

(Emphasis added.) Allen was charged under SMC § 12A.06.040(A)(2)(a), the only section requiring proof of a threat to commit a future act. Under this section, the prosecution was required to show that he knowingly threatened "[t]o cause bodily injury in the future to the person

threatened or to any other person." To establish the harassment charge involving Sauget, the prosecution relied on his testimony that Allen threatened to shoot him the second time he took him outside the store because he hadn't done what Allen told him to do. To establish the harassment charge involving Chandler, the prosecution relied on his testimony that Allen told him he was going to shoot him if he did not do what he was told. Allen concedes that he threatened both Sauget and Chandler with bodily injury. But he argues the evidence only establishes threats to cause *immediate* bodily injury and the evidence, therefore, is insufficient to establish threats to cause bodily injury *in the future.*

*State v. Austin*, 65 Wn. App. 759, 831 P.2d 747 (1992), addressed this issue in the context of the state statute prohibiting harassment, RCW 9A.46.020(1)(a)(i), which uses the same wording as the municipal code provision before us.[1] The State relied on evidence that Austin drove his car past his victim, rolled down his window and stated "[c]ome on, boy, let's fight" while pulling out a knife. 65 Wn. App. at 760. This court reversed Austin's conviction because the State did not establish a threat to do *future* harm. 65 Wn. App. at 761.

*Austin* does not discuss the difference between an immediate and a future threat under the harassment statute in any detail. Thus, we turn to cases addressing this issue in other contexts. In *State v. Gallaher*, 24 Wn. App. 819, 604 P.2d 185 (1979), for example, the court addressed the difference between a threat to cause bodily injury in the

---

[1]The only subsection Austin was charged with violating, RCW 9A.46.020(1), provided that a person is guilty of harassment if:

"(a) Without lawful authority, the person knowingly threatens:

"(i) To cause bodily injury in the future to the person threatened or to any other person; [and]

". . . .

"(b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out."

*Austin*, 65 Wn. App. at 761 n.2.

future and a threat to cause immediate injury in committing the crime of robbery. At Gallaher's trial, the victim, an employee at a fast food restaurant, testified that after Gallaher robbed the restaurant, he turned to him and said if he "reported the robbery, then he should know that [Gallaher] 'was pretty good with the shotgun.'" 24 Wn. App. at 821. The court instructed the jury that the term "threat" "means to communicate, directly or indirectly the intent: to cause bodily injury *in the future* to the person threatened or to any other person." (Italics in original.) On appeal, Gallaher argued that this instruction was error because under RCW 9A.56.190, the statute defining robbery, the threat used must be a threat to use *immediate* force, as opposed to a communicated intent to cause injury in the future. He argued his conviction could not stand because the State only introduced evidence of a future threat of injury. The court agreed that the instruction was in error, noting that "[o]f necessity, a threat is always a communication of intent to cause future harm. However, the definition of 'robbery' requires that the threatened harm be in the immediate future, *i.e.*, while the robbery is taking place." (Italics omitted.) 24 Wn. App. at 821-22. The court nonetheless concluded the error was harmless because the trial court properly instructed the jury on this issue in its definition of robbery and in its to convict instruction. 24 Wn. App. at 822.

The Court of Appeals of Michigan addressed a similar issue in *People v. Krist*, 97 Mich. App. 669, 296 N.W.2d 139 (1980). Krist was charged with and convicted of extortion. At trial, his victim, a gas station attendant, testified Krist told him he would "kick his ass" if he did not put gas in the car, slapped him in the face and told him he had a gun. 296 N.W.2d at 141. On appeal, Krist argued there was insufficient evidence to uphold his conviction for extortion and, at most, he was guilty of unarmed robbery. The court agreed, noting that "[l]arceny by fear of immediate bodily harm or violence to the person will be prosecuted as robbery; the unlawful obtaining of property by threats of a different nature, *i.e.*, threats of future

harm, will ordinarily constitute a different offense such as extortion." 296 N.W.2d at 143. The court reversed Krist's conviction concluding that his threats to the gas station attendant were clearly "threats of immediate physical injury." The court observed that had Krist "in fact beaten [him], it would have been there in the gas station, not at any other time. Similarly, had [he] in fact had a gun and used it, it would have been there in the gas station, not later." The court further noted that "[a]t no time was any threat made of future physical harm or such threats that would remove this case from the purview of the robbery statute." 296 N.W.2d at 143.

■ The difference between the crimes of robbery and extortion discussed by the *Krist* court is analogous to the difference between the crimes of assault and harassment. A threat to cause immediate injury may constitute an assault, but a threat to cause harm in the future is harassment. *Compare* WPIC 35.50 (assault is "an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury") *and* WPIC 36.06 (a person commits the crime of harassment when he or she, without lawful authority, knowingly threatens to cause bodily injury in the future to another person). Because every threat, by necessity, refers to an act sometime in the future, to prove harassment the prosecution is required to produce evidence that the threat is one to cause injury at a different time or place than the time and place where the defendant makes the threat.[2] Without such a requirement, there is nothing to distinguish the crimes of harassment and assault and the phrase "in the future" becomes superfluous.

---

[2]*See Sam v. Commonwealth*, 13 Va. App. 312, 411 S.E.2d 832, 839 (1991) (discussing the meaning of "future harm" in the context of the duress defense and noting, as did the court in *Gallaher*, that the very nature of a threat is to hold out a future harm, and the term "threats of future harm" "denotes threats of harm that might occur at some uncertain time that is distant and separate from the period of duress or coercion").

Here, the prosecution did not produce any evidence that Allen threatened to cause either victim bodily injury at a time or place different from the time or place of the incident. His threats to shoot Sauget because he didn't do what Allen had told him to do and to shoot Chandler if he failed to do what Allen told him were threats to cause immediate bodily injury. This evidence is insufficient to prove a threat to cause bodily injury in the future.

As this case demonstrates, whether there is sufficient evidence of such a threat is a fact-specific inquiry. This was not a hostage situation, as the City argued, from which a fact-finder could conclude that a continuing threat was a threat to do something in the future. It is also not a case in which there is some prior relationship between the defendant and the victim from which it would be reasonable for the fact-finder to conclude that the defendant could find and harm the victim at some later time. Under the specific facts of this case, it is clear that Allen was threatening to injure the victims then and there if they did not do what he wanted. There was no evidence that he threatened to harm them after the incident was over, evidence required to prove the crime of harassment under the section of the ordinance Allen was convicted of violating.

Therefore, the conviction must be reversed and the charges dismissed.

BAKER, C.J., and COLEMAN, J., concur.