[No. 41494-1-I. Division One. January 10, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRIS WILLIAMS, *Petitioner*.

766

*Gregory Charles Link* and *Elise Naomi Gautama*, of Washington Appellate Project, for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Ann Marie Summers, Deputy*, for respondent.

*Gene M. Grantham*, on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

*Aaron H. Caplan* on behalf of American Civil Liberties Union of Washington, amicus curiae.

AGID, A.C.J. — Chris Williams was charged in King County District Court with harassment in violation of two provisions of the state harassment statute, RCW 9A.46-.020(1)(a)(i) and (iv). After a jury found him guilty, Williams appealed to the King County Superior Court, which affirmed the conviction. This court granted discretionary review. On appeal, Williams contends that (1) the statute under which he was convicted is overbroad and void for vagueness, (2) there was insufficient evidence to convict him, and (3) he received ineffective assistance of counsel.

## FACTS

On January 2, 1995, Michael Cannizzaro, the general manager at the Sleep Country USA store in Kent, informed Williams, a store employee, that he had been terminated. Later that day when Williams returned to the store and asked Cannizzaro for his paycheck, Cannizzaro told him it would be available on the next scheduled payday, January 12.

On January 11, Williams returned to the store with a friend and told Sandra Marsh, the bookkeeper, that he had come to get his check. Marsh told Williams he would have to speak with Cannizzaro. When Williams approached Cannizzaro's desk and asked him for his paycheck, Cannizzaro said the checks could not be distributed until the next day. Williams replied that some employees were paid before the scheduled payday, but Cannizzaro explained that was a special exception for the night crew. Williams responded by saying, "Motherfucker, you better give me my check." At that point either Williams or his friend said, "Don't make me do what I want to do," and Williams shifted his body sideways and put his hand on his hip. Cannizzaro saw something in Williams's pants and was certain it was a gun. He testified that Marsh then mouthed the words, "He has a gun." Cannizzaro was scared and gave Williams his paycheck. As Williams and his friend walked out of the store laughing, Williams said, "Don't make me strap your ass." Cannizzaro called the police.

## DISCUSSION

### RCW 9A.46.020(1)(a)(iv) Is Not Substantially Overbroad

Williams contends that one of the two prongs of the criminal harassment statute under which he was convicted, RCW 9A.46.020(1)(a)(iv), is unconstitutionally overbroad on its face and as applied in this case. That portion of the statute reads: "A person is guilty of harassment if . . . the person knowingly threatens[ ] . . . [m]aliciously to do any other act which is intended to substantially harm the

person threatened or another with respect to his or her physical or mental health or safety . . . [.]" Because we conclude that this prong of the harassment statute does not sweep within its confines a "real and substantial" amount of protected conduct, we hold that RCW 9A.46-.020(1)(a)(iv) is not unconstitutionally overbroad.

■ ■ A party bringing a constitutional challenge to a statute bears the burden of proving its unconstitutionality beyond a reasonable doubt.[1] Overbreadth analysis is intended to ensure that legislative enactments do not prohibit constitutionally protected conduct like free speech.[2] Criminal statutes require more exacting scrutiny and may be facially invalid even if their application is legitimate.[3] Unless the appellant presents a state constitutional analysis as described in *State v. Gunwall*,[4] this court decides the overbreadth issue under federal constitutional law.[5]

■ ■ The first task in an overbreadth analysis is to determine if a statute reaches constitutionally protected activity.[6] Because the criminal harassment statute prohibits threats, it proscribes pure speech and not merely conduct.[7] The United States Supreme Court has held that true threats must be distinguished from constitutionally protected speech.[8] A "true threat" is a statement made in a context in which a reasonable person would foresee that the statement would be interpreted as a serious expression of an intention to inflict bodily harm upon or to take the

[1]*State v. Halstien*, 122 Wn.2d 109, 118, 857 P.2d 270 (1993).

[2]*City of Tacoma v. Luvene*, 118 Wn.2d 826, 827 P.2d 1374 (1992).

[3]*City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989).

[4]106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4TH 517 (1986).

[5]*See State v. Talley*, 122 Wn.2d 192, 212, 858 P.2d 217 (1993). Williams does not offer a *Gunwall* analysis.

[6]*Halstien*, 122 Wn.2d at 122.

[7]*See City of Seattle v. Ivan*, 71 Wn. App. 145, 150, 856 P.2d 1116 (1993).

[8]*Watts v. United States*, 394 U.S. 705, 707, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969).

life of another individual.[9] But RCW 9A.46.020(1)(a)(iv) criminalizes, among other things, threats to do an act intended to substantially harm another's "mental health." These are not threats to inflict bodily harm or to take the life of another. The statute therefore prohibits at least some threats that are not "true threats" and therefore, on its face, the statute proscribes at least some protected speech.

Because RCW 9A.46.020(1)(a)(iv) prohibits protected speech, we must next examine whether the statute prohibits a "real and substantial" amount of protected activity in contrast to the statute's plainly legitimate sweep.[10] Even a substantially overbroad statute will not be overturned if the court is able to place a sufficiently limiting construction on it.[11] If possible, a statute must be interpreted in a manner that upholds its constitutionality.[12]

■ Williams argues that RCW 9A.46.020(1)(a)(iv) prohibits a substantial amount of protected speech for two reasons. First, he claims the statute criminalizes "any and all intentional conduct causing another person mental harm." Second, he contends the term "mental health" is a "definitional mystery" because it is not clearly defined in Washington law and is given very broad dictionary definitions. We disagree and hold that RCW 9A.46.020(1)(a)(iv) is not substantially overbroad because the statute, when read as a whole, contains limiting factors that sufficiently restrict its scope.

RCW 9A.46.020(1)(a)(iv) proscribes only threats to do an act that is intended to substantially harm another's physical or mental health or safety. In addition, the threat must

---

[9]*United States v. Khorrami*, 895 F.2d 1186, 1192 (7th Cir.), *cert. denied*, 498 U.S. 986 (1990); *see also United States v. Orozco-Santillan*, 903 F.2d 1262, 1265-66 (9th Cir. 1990) (equating a "true threat" with a situation "where a reasonable person would foresee that the listener will believe he will be subjected to physical violence upon his person . . . .").

[10]*Halstien*, 122 Wn.2d at 123.

[11]*Id.*; *see also State v. Dana*, 84 Wn. App. 166, 175, 926 P.2d 344 (1996), *review denied*, 133 Wn.2d 1021 (1997).

[12]*Halstien*, 122 Wn.2d at 123.

be "malicious," which means "an evil intent, wish, or design to vex, annoy, or injure another person."[13] Finally, criminal liability attaches only if the person threatened has a reasonable fear that the threat will be carried out. These factors sufficiently limit the scope of the statute's application despite any ambiguity surrounding the term "mental health." Contrary to Williams's argument, a person cannot be convicted simply because he or she makes a threat. The State must also prove intent, malice, and a fear that is reasonable.

Williams's claim that a specific intent element cannot cure an overbreadth defect is based on a misunderstanding of this court's analysis in *City of Seattle v. Ivan*, where we held that Seattle's coercion ordinance was overbroad.[14] The City argued that a requirement of criminal intent to threaten should be implied in the ordinance to limit its scope and thereby avoid a finding that it was overbroad. We refused to imply an intent requirement in that statute because threats require no additional element of intent. A threat is inherently intentional; one cannot innocently threaten another.[15] In contrast, the statute at issue here requires that the threat itself be *knowing*.[16] The State here argued that it is the intent to do substantial harm, not the intent to threaten, that limits the breadth of the statute. The *Ivan* analysis is inapposite to this case.

The overbreadth doctrine is strong medicine we should use sparingly and only as a last resort.[17] RCW 9A.46-.020(1)(a)(iv) contains substantial limiting factors that prevent it from proscribing a real and substantial amount of protected speech and conduct. We reject Williams's overbreadth claim.

---

[13]RCW 9A.04.110(12).

[14]71 Wn. App. 145, 154, 856 P.2d 1116 (1993).

[15]*Id.* at 154-57.

[16]RCW 9A.46.020(1)(a).

[17]*Halstien*, 122 Wn.2d at 122.

## RCW 9A.46.020(1)(a)(iv) Is Not Unconstitutionally Vague

Williams also contends that RCW 9A.46.020(1)(a)(iv) is unconstitutionally vague on its face and as applied in this case.[18] We conclude that this prong of the harassment statute provides the ordinary person with adequate notice of what threats are prohibited and contains standards that satisfactorily guard against arbitrary enforcement and hold that RCW 9A.46.020(1)(a)(iv) is not unconstitutionally vague.

■ As with Williams's overbreadth challenge, we analyze the vagueness issue under federal constitutional law because Williams offers no *Gunwall* analysis.[19] The due process clause of the Fourteenth Amendment requires that citizens receive fair warning of proscribed conduct.[20] Fair warning of prohibited activity is required so that citizens "may plan their activity accordingly and freely enjoy those activities which are not expressly illegal."[21] A statute is facially void for vagueness if it fails to either (1) define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited or (2) provide ascertainable standards of guilt to guard against arbitrary enforcement.[22] The vagueness doctrine serves two purposes: first, it ensures that citizens receive fair warning of what conduct they must avoid, and second, it protects citizens from "arbitrary, ad hoc, or discriminatory law enforcement."[23] "[I]mpossible standards of specificity" or "mathematical certainty" are not required because some

---

[18]Williams may challenge the statute on its face because it implicates First Amendment rights. If those rights were not involved, he would be limited to challenging it as applied to the facts of his case. *See City of Spokane v. Douglass*, 115 Wn.2d 171, 182, 795 P.2d 693 (1990).

[19]*See Douglass*, 115 Wn.2d at 176-77.

[20]*Id.* at 178.

[21]*State v. Crediford*, 130 Wn.2d 747, 766, 927 P.2d 1129 (1996).

[22]*Halstien*, 122 Wn.2d at 117.

[23]*Id.*

degree of vagueness is inherent in any use of language.[24] The measure for vagueness is common intelligence, and a statute is unconstitutionally vague if " 'it forbids conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application.' "[25] A statute is presumed constitutional, and the challenging party has the burden of proving otherwise beyond a reasonable doubt.[26]

Williams argues that the statute is vague because there is no established meaning of "mental health" in dictionaries or in Washington law. He also contends the statute fails to provide proper notice of what behavior the statute prohibits because whether a threat harms another's "mental health" depends on the victim's threshold tolerance for a threat and is therefore inherently subjective. In addition, Williams asserts it invites a law enforcement officer's "subjective determination" about whether a threat is intended to harm another's mental health because the statute provides no guidelines for its application.

The State contends that "mental health" has a common meaning understood by persons of ordinary intelligence and relies on dictionary definitions of "mental" and "health" to support its claim that "mental health" means "a state whereby one's mind is free from disease or defect and functions normally." Thus, in the State's view, while annoying or angering another would not substantially harm that person's mental health, committing an act that causes a significant depression would. The State also argues that the statute has objective standards which protect against arbitrary enforcement: First, the statute criminalizes only threats to do acts *intended* by the defendant to cause substantial harm, and criminality therefore does not depend on the victim's subjective reaction; second, the victim must be placed in *reasonable* fear.

---

[24]*Id.* at 118.

[25]*Douglass*, 115 Wn.2d at 179 (quoting *Burien Bark Supply v. King County*, 106 Wn.2d 868, 871, 725 P.2d 994 (1986)).

[26]*Halstien*, 122 Wn.2d at 118.

■ Although the meaning of "mental health" is not certain when the term is viewed in isolation from the remainder of the statute, this is not a sufficient basis for concluding that RCW 9A.46.020(1)(a)(iv) is vague beyond a reasonable doubt. "The language of a challenged statute will not be looked at in a vacuum, rather, the context of the entire statute is considered."[27] Williams's analysis, which focuses solely on the term "mental health," is too narrow because it fails to heed this principle.

■ We conclude that RCW 9A.46.020(1)(a)(iv) is not unconstitutionally vague because, when read in its entirety, it contains specific conditions that collectively give the ordinary citizen adequate notice of what type of threats it prohibits. First, criminality under RCW 9A.46.020(1)(a)(iv) does not depend on the victim's subjective reaction, as Williams claims, because it prohibits only acts *intended* by the defendant to cause substantial harm to another's mental health. The harm that the victim actually suffers, if any, is irrelevant.[28] Second, the threat must be made *knowingly* and *maliciously*. Third, the threat must be to do an act that is intended to cause *substantial* harm to another's mental health. Finally, the person threatened must have a *reasonable fear* that the threat will be carried out.

When viewed together, these limitations support our conclusion that RCW 9A.46.020(1)(a)(iv) is not vague and clarify any ambiguity in the term "mental health." Viewing the statute as a whole, the ordinary person would know that harm to mental health does not include the incidental annoyances or upsets of everyday life, such as anger or sadness, in response to another person's speech. Rather, the statute precludes only threats that are made in a particular manner (knowingly and maliciously), to do an act that is calculated to cause significant injury (substantial harm to

[27]*Huff*, 111 Wn.2d at 929.

[28]*Cf. City of Spokane v. Fischer*, 110 Wn.2d 541, 544-45, 754 P.2d 1241 (1988) (holding that an ordinance was void for vagueness because whether a violation occurs "depend[s] solely on the subjective feeling of annoyance or disturbance by a particular person or neighborhood").

another's physical or mental well-being or safety), and that cause a certain kind of fear (reasonable). It follows that, because the statute as a whole provides the ordinary person with constitutionally-sufficient notice, the limitations on its application discussed above also provide sufficient standards to prevent arbitrary enforcement.

Contrast this statute with Everett's harassment ordinance which we held was void for vagueness in *City of Everett v. Moore*.[29] There the challenged provision read: "A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he . . . [e]ngages in a course of conduct that alarms or seriously annoys another person and which serves no legitimate purpose."[30] We reasoned that this provision "does not draw a reasonably clear line between the kind of annoying conduct which is criminal and that which is not," fails to establish clear guidelines for enforcement, and invites officials and triers of fact "to pursue their personal predilections in enforcing the law."[31] But that ordinance did not contain the significant limiting factors, such as malice, knowledge, and reasonable fear, that the statute here does. Because RCW 9A.46.020(1)(a)(iv) severely limits the behavior that it criminalizes, it gives the ordinary citizen notice of what types of threats it prohibits and contains standards that satisfactorily guard against arbitrary enforcement.

There Was Substantial Evidence to Find That Williams Knowingly Threatened to Cause Bodily Injury in the Future

■ Evidence is sufficient if, viewing it in the light most favorable to the State, any rational trier of fact could find each of the essential elements of the charged crime beyond

---

[29]37 Wn. App. 862, 683 P.2d 617 (1984).

[30]*Id.* at 863.

[31]*Id.* at 866-67.

a reasonable doubt.[32] All reasonable inferences from the evidence must be drawn in favor of the State and interpreted against the defendant.[33] A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn from it.[34]

Williams claims there was insufficient evidence for the jury to conclude that he threatened to cause *future* bodily injury. Former RCW 9A.46.020(1)(a)(i), the other provision of the statute under which Williams was convicted, required a threat to cause bodily injury in the future:

(1) A person is guilty of harassment if:

(a) Without lawful authority, the person knowingly threatens:

(i) To cause bodily injury in the future to the person threatened or to any other person; or[35]

Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found Williams guilty of threatening to cause bodily injury in the future. Both Cannizzaro and Karen Carney, another Sleep Country employee, testified that, after Cannizzaro gave Williams his paycheck and as Williams was leaving the store, Williams said, "Don't make me strap your ass." The State had the burden of proving that this statement was a threat to cause bodily injury at a different time or place.[36] Because Cannizzaro had already given Williams his check, it is unclear when or under what circumstances Williams might have carried out his threat to "strap your ass." Whether there is

---

[32]*State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *State v. Bradley*, 96 Wn. App. 678, 685, 980 P.2d 235, 240 (1999).

[33]*State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[34]*Id.*

[35]The Legislature amended this section in 1997 to require a threat of bodily injury "immediately or in the future."

[36]*City of Seattle v. Allen*, 80 Wn. App. 824, 831, 911 P.2d 1354 (1996) (analyzing a provision in the SEATTLE MUNICIPAL CODE identical to former RCW 9A.46.020(1)(a)(i)).

sufficient evidence to prove a threat to cause bodily injury in the future is a fact-specific inquiry.[37] Drawing all reasonable inferences in favor of the State, a rational trier of fact could have concluded that this statement was a threat of future harm since Cannizzaro had already done what Williams specifically requested. There was substantial evidence to find that Williams threatened future bodily harm.

## Williams Did Not Receive Ineffective Assistance of Counsel

 Review of an ineffective assistance claim begins with a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[38] To succeed on this claim, Williams must establish that (1) counsel's conduct fell below an objective standard of reasonableness, and (2) but for counsel's errors, there is a reasonable probability the outcome would have been different.[39] Courts must afford counsel wide latitude and flexibility in trial psychology and tactics.[40] In a claim for ineffective assistance of counsel, "[t]he defendant has the heavy burden of showing, after a *review of the entire record*, that counsel's performance fell below the objective standard of reasonableness after considering all surrounding circumstances."[41]

Williams contends that defense counsel inferred Williams's guilt to the jury by stating that Williams was invoking his "right not to self incriminate himself." In front of the jury after all of the evidence was presented and before closing arguments, counsel said:

Your honor based on the evidence presented by the State at

---

[37]*Id.* at 832.

[38]*In re Personal Restraint of Pirtle*, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).

[39]*Id.*

[40]*Id.* at 488.

[41]*State v. Sherwood*, 71 Wn. App. 481, 483, 860 P.2d 407 (1993), *review denied*, 123 Wn.2d 1022, 875 P.2d 635 (1994) (citations omitted) (emphasis added).

this point the defense will waive opening argument and at this point also based on the evidence presented by the State Mr. Williams will be deserving or I guess uh, (unintelligible 388) he will be using his Fifth Amendment right not to self incriminate himself and at this point the defense rests.

Williams claims ineffective assistance of counsel because it was "simply unreasonable for counsel to suggest to the jury that his client did not testify to avoid self-incrimination" and that, but for this comment, "the outcome of the trial would have been different." The State counters that defense counsel's purpose in making this statement was to emphasize the inadequacy of the State's proof, i.e., Williams did not need to testify because the State had not proven its case.

Williams relies on an isolated statement to show ineffective assistance and has made no showing as to *how* the statement inferred to the jury that he was guilty. Further, the record strongly supports the State's interpretation of defense counsel's statement. During closing argument defense counsel pointed out:

> The State thought this case was so easy. He just mentioned the gun and then jury is going to find him guilty of this charge. Well I suggest to you folks that the State hasn't proven anything and again I'll note to you the jury instruction that's given to you with respect to the defendant not testifying. It's a very short paragraph. "The defendant is not compelled to testify and the fact that the defendant does not testify cannot be used to infer guilt or prejudice him in any way." *He is not testifying because the State has not proven anything. There is no need for him to testify. The State hasn't proven their case beyond a reasonable doubt. . . .*[42]

This argument confirms the State's theory that the statement upon which Williams bases his ineffective assistance claim was probably intended to convey to the jury that Williams did not testify because the State had not proven its case and it was therefore unnecessary for Williams to

[42](Emphasis added.)

testify. This was reasonable. And even if defense counsel's statements fell below the objective standard of reasonableness, Williams has made no showing of prejudice. Rather, Williams merely makes the conclusory claim that "[i]f defense counsel had not implied that Mr. Williams was guilty, the outcome of the trial would have been different." This is insufficient to establish an ineffective assistance claim.

APPELWICK, J., concurs.

BAKER, J. (dissenting) — I respectfully dissent. Because the statute defines criminal harassment in part as commission of an act intended to cause substantial harm to a person's "mental health," the statute is unconstitutionally vague on its face.

The majority correctly notes that a statute is facially void for vagueness if it fails to define a criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. The majority then concludes that the subject statute is not vague because "it contains specific conditions that collectively give the ordinary citizen adequate notice of what type of threats it prohibits." But none of the four reasons cited by the majority in support of this conclusion address the fatal flaw with the statute, namely, the lack of definition concerning the term "mental health."

The majority first states that the statute prohibits "only acts *intended* by the defendant to cause substantial harm to another's mental health." While that may be true, it begs the question concerning the lack of any definition of mental health. Nor is that definition provided by the majority's second point, which notes that "the threat must be made *knowingly* and *maliciously*." The same flaw exists regarding the majority's third point, which notes that "the threat must be to do an act that is intended to cause *substantial* harm to another's mental health."

Finally, the majority notes that the victim must have a

*reasonable* fear that the threat will be carried out. That is true, but this statutory requirement does not address in any way the meaning of mental health. It is a separate element that exists quite independently of the concept of mental health.

In short, none of the reasons set forth by the majority addresses, much less cures, the problem of the vagueness of the term "mental health."

In its briefing and argument to this court, the State struggled to save the statute from unconstitutional vagueness by contending that the term "mental health" is readily understood by a person of ordinary intelligence. That it is not seems clear from the State's utilization of a combination of dictionary definitions for the words "mental" and "health" to provide a strained definition of the term "mental health" as "a state whereby one's mind is free from disease or defect and functions normally." The Legislature did not explicitly set forth this strained definition, and to the majority's credit, it did not accept the argument.

Given that the term "mental health" is neither statutorily defined nor sufficiently definite that ordinary people can understand what conduct is prohibited, I would reverse. The lack of definition concerning the term "mental health" renders the statute facially void.

Review granted at 141 Wn.2d 1001 (2000).