IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36070-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CALEB JOEL STANLEY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Caleb Joel Stanley appeals two first degree assault convictions, arguing a violation of his right to jury unanimity. We affirm.

FACTS

Nikia Gabriel was fueling up a Cadillac Escalade owned by his godfather, Jacob Level, when he was approached by an acquaintance named Caleb Stanley. Mr. Stanley was complimentary of the Escalade, and stated he "'want[ed] a ride.'" Report of Proceedings (Apr. 9, 2018) at 143. Mr. Gabriel did not agree to give him one. Mr. Stanley

walked into the gas station's convenience store while Mr. Gabriel continued pumping gas. When Mr. Stanley returned, he "started to move stuff out of the [vehicle's] passenger seat." *Id*.

Mr. Gabriel asked what Mr. Stanley was doing, and then told him, "'Dude, I didn't tell you I'm giving you a ride. I didn't say I could give you a ride. This is not my vehicle and I don't have time for this; I got to get it back home.'" *Id*. at 144.

Mr. Stanley grabbed a blue wrench from the passenger seat and responded: "'Well, if you don't give me a ride I'm going to take your ride.'" *Id*.

Mr. Gabriel relented. He told Mr. Stanley he was going back to his residence. At the time, Mr. Gabriel lived at the same apartment complex as the vehicle's owner, Mr. Level. During the ride, Mr. Stanley repeatedly stated his desire to acquire the Escalade.

Mr. Gabriel arrived at the apartment complex and entered the building; Mr. Stanley remained in the vehicle. Mr. Gabriel contacted Mr. Level and said, "'Look, Caleb [Stanley] is down in your vehicle, and he's not getting out.'" *Id*. at 146; *see also id*. at 174.

Mr. Level and Mr. Gabriel ran outside to confront Mr. Stanley. As he approached the vehicle, Mr. Level "could see [Mr. Stanley] . . . rummaging around [in the vehicle's] center console." *Id*. at 175. Mr. Level confronted Mr. Stanley. He demanded Mr. Stanley

"'get the F out of my vehicle. I know what you're doing.'" *Id*. Mr. Level saw Mr. Stanley was holding what appeared to be one of Mr. Level's pill bottles. He instructed Mr. Stanley to put it back. Mr. Stanley responded by grabbing Mr. Level's hair and stating, "'[t]his is mine, bitch.'" *Id*. He then began spraying Mr. Level with bear mace.

Mr. Level started screaming for help. Mr. Gabriel responded by putting Mr. Stanley in a chokehold until Mr. Stanley ceased his attack on Mr. Level. After Mr. Gabriel released him, Mr. Stanley started "unload[ing] the entire can of bear mace" in the alley where the fight had taken place. *Id*. at 147-48. Mr. Gabriel was caught in the fog of mace unleashed by Mr. Stanley. After the mace can was empty, Mr. Stanley threw it at Mr. Gabriel, hitting him in the eye. "After that . . . [Mr. Stanley] acted like he was going to advance on [Mr. Gabriel] again, and [Mr. Gabriel] just hugged him and [they] both fell to the ground." *Id*. at 148. Mr. Gabriel repelled Mr. Stanley after a short scuffle. Mr. Stanley ran away and was later arrested. He did not succeed in acquiring the Escalade.

The State charged Mr. Stanley with one count of first degree extortion, one count of resisting arrest, and two counts of second degree assault—one for each victim. The State alleged two alternatives for each of the second degree assaults. It alleged Mr. Stanley committed assault (1) with intent to commit a felony and (2) by administering a poison or other destructive noxious substance. RCW 9A.36.021(1)(d)-(e).

3

The case proceeded to trial. A jury acquitted Mr. Stanley of extortion, but

convicted him of resisting arrest and both assault charges. At sentencing, the trial court

imposed $1,100 in legal financial obligations (LFOs), including a $200 criminal filing

fee, a $250 court-appointed attorney fee, a $100 DNA[1] collection fee, and a $50 jail

booking fee. Mr. Stanley filed a declaration noting he had no assets or income; the court

allowed him to appeal at public expense.

Mr. Stanley appeals.

## ANALYSIS

*Jury unanimity and alternative means*

Washington's criminal code specifies seven alternative means of committing

second degree assault. RCW 9A.36.021(1). Mr. Stanley was charged with two: assault

with intent to commit a felony and assault through use of a "destructive or noxious

substance." RCW 9A.36.021(1)(d)-(e). Where, as here, the defendant is charged with

more than one alternative means of committing the same crime, the State can avoid jury

unanimity problems by introducing sufficient evidence to support each alleged

alternative. *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014). The standard

sufficiency analysis governs our review: we ask whether the evidence, viewed in the light

---

[1] Deoxyribonucleic acid.

most favorable to the State, could justify a rational juror finding guilt beyond a reasonable doubt as to each alternate means. *State v. Armstrong*, 188 Wn.2d 333, 341, 394 P.3d 373 (2017).

Mr. Stanley does not dispute the jury was presented with sufficient evidence to find assault by administration of a noxious substance. His sole complaint is that the evidence was insufficient to justify a finding of guilt by means of intent to commit another felony. We therefore focus on the law and evidence relevant to that claim.[2]

The evidence easily supports a jury finding Mr. Stanley assaulted Mr. Gabriel and Mr. Level with intent to commit vehicle theft. Theft of a motor vehicle is a felony involving the wrongful acquisition or unauthorized exertion of control over a motor vehicle. RCW 9A.56.020(1), .065. Mr. Stanley repeatedly made clear his aggressive words and conduct against Mr. Gabriel and Mr. Level were motivated by a desire to

---

[2] Mr. Stanley's assault charges alleged he committed assault with intent to commit two different felonies: (1) extortion and (2) theft of a motor vehicle. The parties fail to clarify whether those two intended felonies are themselves alternative means (thus necessitating sufficient proof as to each) or whether they are definitional means within a means (thus requiring sufficient proof as to only one intended felony). *See State v. Smith*, 159 Wn.2d 778, 784-90, 154 P.3d 873 (2007) (explaining the alternative means doctrine has not been extended to definitional means within a means). We need not resolve this issue as the evidence was sufficient as to each intended felony.

5

illegally obtain the Escalade. The evidence was therefore sufficient to find Mr. Stanley

acted with the intent to commit the felony of theft of a motor vehicle.

The extortion analysis is a bit more complex. Extortion is a felony that requires

intent to obtain property or services by means of threat. RCW 9A.56.110-.130. The threat

can be indirect or direct, RCW 9A.04.110(28), and may be "implied by words or

conduct." *State v. Farnsworth*, 185 Wn.2d 768, 771, 374 P.3d 1152 (2016). While

robbery involves an immediate threat of harm, extortion happens when a threat extends

into the future. *City of Seattle v. Allen*, 80 Wn. App. 824, 831, 911 P.2d 1354 (1996).

As previously noted, Mr. Stanley used threatening words and conduct against Mr.

Gabriel and Mr. Level while trying to illegally obtain the Escalade. Because Mr. Stanley

was an acquaintance of Mr. Gabriel and Mr. Level, the jury could infer Mr. Stanley's

words and conduct did not merely threaten immediate harm. *See id.* at 832. Instead, by

verbally threatening and physically assaulting the two men, the jury could infer that

Mr. Stanley intended to send a message that if the Escalade was not permanently released

to Mr. Stanley, additional assaultive conduct would continue into the future. *See id.* This

was sufficient for the jury to find Mr. Stanley acted with intent to commit extortion as to

each of the two victims.

The fact that the jury acquitted Mr. Stanley of extortion has no bearing on our analysis. A jury can refuse to convict regardless of whether the State has presented sufficient evidence to justify a guilty verdict. Furthermore, Mr. Stanley's assault charge only involved proof of intent to commit extortion; a completed criminal act was unnecessary. Thus, the jury's acquittal on the extortion count does not suggest the State presented insufficient evidence that Mr. Stanley committed assault with intent to commit extortion.

*LFOs*

Citing 2018 amendments to Washington's LFO laws[3] and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), Mr. Stanley requests we strike his $200 criminal filing fee, $50 booking fee, and $250 court-appointed attorney fee on the basis of indigence. He also asks that his $100 DNA collection fee be struck because his sample is already on file. The 2018 LFO amendments came into effect approximately two months after Mr. Stanley's sentencing. *Ramirez* was decided after that.

Mr. Stanley is correct that, under the terms of the law now in effect, he is entitled to relief from the $200 criminal filing fee, $250 court-appointed attorney fee, and $100 DNA collection fee. Although at the time of sentencing the trial court may have exercised

---

[3] LAWS OF 2018, ch. 269.

valid discretion to impose discretionary LFOs based on Mr. Stanley's ability to work, the law has since changed. Under current law, certain LFOs "may not" be imposed against a defendant who is "indigent" at the time of sentencing as that term is defined by RCW 10.101.010(3)(a)-(c). RCW 9.94A.760(1); *see also* RCW 10.01.160(3); RCW 36.18.020(2)(h). Furthermore, *Ramirez* held that a defendant like Mr. Stanley, whose case was pending direct review at the time of the effective date of the 2018 LFO amendments, is entitled to the benefit of the 2018 law. *Ramirez*, 191 Wn.2d at 747-48.

The record here indicates that, at the time of sentencing, Mr. Stanley was indigent as defined by RCW 10.101.010(3)(c). Thus, he is entitled to relief from the criminal filing fee and court-appointed attorney fee. *State v. Smith*, 9 Wn. App. 2d 122, 126-27, 442 P.3d 265 (2019); RCW 36.18.020(2)(h); RCW 10.01.160(3). In addition, Mr. Stanley's recent felony history indicates the State has previously collected a DNA sample. As a result, the $100 DNA collection fee is not required. RCW 43.43.7541.

The $50 booking fee merits different treatment. The booking fee is authorized by RCW 70.48.390. This statute was unaltered by the 2018 LFO amendments. Resultantly, his indigence does not entitle Mr. Stanley to relief from the booking fee.

No. 36070-9-III
*State v. Stanley*

## CONCLUSION

The judgment of conviction is affirmed. We remand with instructions to strike the $200 criminal filing fee, $250 court-appointed attorney fee, and $100 DNA collection fee from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____ _____
Lawrence-Berrey, C.J.       Fearing, J.

9