[No. 8838-0-II.   Division Two.   February 9, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL JOHN PLEWAK, *Appellant*.

*Markku A. Sario,* for appellant (appointed counsel for appeal).

*William H. Griffies, Prosecuting Attorney,* and *Carolyn Williamson, Deputy,* for respondent.

WORSWICK, J.—Michael Plewak appeals juvenile court convictions on two counts of first degree arson. We affirm.

Plewak was charged with setting two separate garage fires in Tacoma in February 1985. The first occurred February 17; it destroyed a 2-story detached garage at the home of Ora Allen, where Plewak had been placed as a foster child. The second, a week later, destroyed a detached garage less than two blocks from the Allen home. In both instances, responding fire fighters saw flames visible from a half mile or more away. Both fires were controlled without major incident, although fire fighters at the Allen fire were

told that someone might still be in the garage. They entered to search the ground floor while the second floor still was burning, but found no one.

Plewak was convicted at a bench trial in juvenile court, and a combined sentence of 206 to 258 weeks was imposed.[1] This appeal followed.

Plewak first contends that the arson statute, RCW 9A.48.020, is unconstitutionally vague.[2] We disagree.

■■ Statutes are presumed constitutional; the challenger has the burden of proving a statute unconstitutional beyond a reasonable doubt. *State v. Maciolek,* 101 Wn.2d 259, 676 P.2d 996 (1984); *State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971). Statutes may be unconstitutionally vague either on their face or only as to certain applications. *Bellevue v. Miller,* 85 Wn.2d 539, 541, 536 P.2d 603 (1975). The test to be applied depends upon the challenge. *Maciolek,* 101 Wn.2d at 262. If the challenge is facial, the defendant's conduct will be ignored and the statute examined to determine whether any conviction under it could be constitutionally upheld. If not, it is facially flawed. *Miller,*

---

[1]Plewak was sentenced to an additional 2 weeks to run consecutively on a charge of reckless burning. He pleaded guilty to that charge and it is not at issue here.

[2]RCW 9A.48.020 defines arson in the first degree as follows:
"(1) A person is guilty of arson in the first degree if he knowingly and maliciously:
"(a) Causes a fire or explosion which is manifestly dangerous to any human life, including firemen; or
"(b) Causes a fire or explosion which damages a dwelling; or
"(c) Causes a fire or explosion in any building in which there shall be at the time a human being who is not a participant in the crime; or
"(d) Causes a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance proceeds.
"(2) Arson in the first degree is a class A felony."
RCW 9A.04.110(12) defines malice as follows:
"'Malice' and 'maliciously' shall import an evil intent, wish, or design to vex, annoy, or injure another person. Malice may be inferred from an act done in wilful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a wilful disregard of social duty;"

85 Wn.2d at 541. A defendant's particular conduct is examined when a statute is challenged only as to certain applications, because even though it may be vague as to certain conduct, it still may be constitutionally applied to one whose conduct clearly falls within the scope of its core. *State v. Zuanich,* 92 Wn.2d 61, 593 P.2d 1314 (1979). Plewak seems to suggest that the statute is invalid both facially and in its application to him. We are, therefore, put to the chore of testing it both ways.

■■ A 2–step analysis is required to determine facial validity: first, is there adequate notice of the prohibited conduct and, second, are there adequate standards to prevent arbitrary enforcement. *Maciolek,* 101 Wn.2d at 264. Common intelligence and reasonable understanding are the measures of adequate notice. If persons of reasonable understanding or common intelligence can understand a penal statute without having to guess at its meaning, the statute meets the requirements of constitutional due process. *State v. Foster,* 91 Wn.2d 466, 474, 589 P.2d 789 (1979); *Spokane v. Vaux,* 83 Wn.2d 126, 129, 516 P.2d 209 (1973). Even possible areas of disagreement about precise meaning will not render a statute wanting in certainty. *Vaux,* 83 Wn.2d at 129. Further, rules of statutory construction require that each section be construed in connection with the others to produce a harmonious whole. *State v. Marshall,* 39 Wn. App. 180, 692 P.2d 855 (1984).

Plewak builds his argument around the claimed vagueness of three words or phrases: "without just cause or excuse," "annoy," and "reckless." None is part of the definition of arson in RCW 9A.48.020. The first two appear in the definition of malice, RCW 9A.04.110(12), and the last in RCW 9A.08.010.[3]

---

[3]RCW 9A.08.010 reads, in relevant part:

"*General requirements of culpability.* (1) *Kinds of Culpability Defined.*

"(a) Intent. A person acts with intent or intentionally when he acts with the objective or purpose to accomplish a result which constitutes a crime.

"(b) Knowledge. A person knows or acts knowingly or with knowledge when:

"(i) he is aware of a fact, facts, or circumstances or result described by a stat-

■ Plewak's attack on the phrase "without just cause or excuse" is misplaced. In each of the cases he relies on (*State v. Richmond*, 102 Wn.2d 242, 683 P.2d 1093 (1984); *State v. Hilt*, 99 Wn.2d 452, 662 P.2d 52 (1983); and *State v. White*, 97 Wn.2d 92, 640 P.2d 1061 (1982)), a similar phrase was included in the definition of the offense in such a way that the very behavior proscribed was made vague and subject to interpretation. *See, e.g., Hilt*, 99 Wn.2d at 454–55. In effect, the phrase robbed the statutes of their certainty; potential defendants had no clear guidelines as to whether their acts or omissions would be unlawful. *See, e.g., Richmond*, 102 Wn.2d at 244–45. In this case, the phrase appears in the section defining and dealing with allowable inferences regarding malice. It does not directly define an element of the crime so as to render the statute, when read as a whole, so vague as to permit "ad hoc decisions of criminality based on the moment to moment judgment of a policeman." *Maciolek*, 101 Wn.2d at 267.

Plewak claims that the word "annoy" makes the statute vague for lack of a normative standard of conduct, citing *Everett v. Moore*, 37 Wn. App. 862, 683 P.2d 617 (1984). *Moore* is inapposite. There, a municipal ordinance prohibiting "annoying" or "alarming" conduct or communication was found both vague and overbroad. It lacked the "precision of regulation" required by the First Amendment when proscribing speech; it failed to draw a reasonably clear line between criminal and noncriminal conduct. *Moore*, 37 Wn.

---

ute defining an offense; or

"(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.

"(c) Recklessness. A person is reckless or acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation.

"(d) Criminal negligence. A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation."

App. at 865–66. The case dealt with a constitutionally protected right and is distinguishable on that ground alone. In addition, the word as used here does not directly define an element of the crime, but instead deals with allowable inferences regarding malice; therefore its effect, such as it is, is not sufficient to render the arson statute void for vagueness.

Plewak finally contends that the definition of "recklessness" includes certain elements identical to those regarding malice and that the overlap renders the arson statute impermissibly vague. Again, he misses the mark. RCW 9A.08.010, in which the term appears, defines levels of culpability for all crimes. It is the level of culpability specified in the definition of a particular crime that the State must prove to convict a defendant for that crime. *State v. Allen*, 101 Wn.2d 355, 678 P.2d 798 (1984). Thus, if, as here, malice is the level of culpability required, only the definition of malice, not any "overlap" it may have with an unrelated definition, need be considered.[4]

In sum, RCW 9A.48.020 provides both adequate notice of the conduct it proscribes and adequate standards to prevent arbitrary and "ad hoc" enforcement. A person of reasonable understanding or common intelligence can understand the statute without having to guess at its meaning; the statute withstands Plewak's facial challenge.

Likewise, we find no constitutional deficiency in the statute as applied to Plewak, and we need fewer words to explain why. The trial court found that he had knowingly caused fires manifestly dangerous to human life, actions

---

[4]The "overlap," such as it is, can easily be explained. RCW 9A.08.010(2) provides that proof of a higher level of culpability necessarily proves the next lower level. It reads:

"Substitutes for Criminal Negligence, Recklessness, and Knowledge. When a statute provides that criminal negligence suffices to establish an element of an offense, such element also is established if a person acts intentionally, knowingly, or recklessly. When recklessness suffices to establish an element, such element also is established if a person acts intentionally or knowingly. When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally."

plainly within the core of the statute. We need say no more. *State v. Zuanich, supra.*

We find no merit in Plewak's next contention, that the trial court improperly inferred malice. Plewak cites *State v. Johnson,* 23 Wn. App. 605, 596 P.2d 1047 (1979), in which the court held that malice did not necessarily follow from the starting of a nonaccidental fire. *Johnson* is not in point. The trial court here inferred malice—the requisite criminal intent—because the fires were deliberately set.

We are also unpersuaded by Plewak's challenge to the court's finding that the fires had been "manifestly dangerous" to human life. That determination is a question of fact. *State v. Young,* 87 Wn.2d 129, 550 P.2d 1 (1976). Considerations include the presence of occupants, combustibility, and proximity to other structures. *Young,* 87 Wn.2d at 133. Further, "in a civilized city such as Tacoma, experience teaches that one of the certainties attendant upon a hostile fire is that firemen will be called and will come . . . the arsonist can anticipate that firemen will be endangered." *State v. Levage,* 23 Wn. App. 33, 35, 594 P.2d 949 (1979).

Plewak claims that "manifest danger" necessarily requires a showing of unequivocal danger to the lives of firemen, and that the firemen must actually encounter it. He claims that the court's finding of manifest danger was based solely on the fire's visibility from a distance. We disagree. The court found a manifest danger to be one that is obvious, *i.e.,* clearly evident to the senses and the mind. *See* Black's Law Dictionary 867 (5th ed. 1979). Danger is not measured by the harm done, but rather by the potential for harm. The record here supports the court's finding. The court considered the size of the fires, their residential locations, and the apparent danger to responding firemen. In one instance, firemen entered the garage while it still was burning to search for a possible occupant. One battalion fire chief testified his men were in danger because of the extent of the flames and their possible involvement with overhead power lines. The potential for harm was clearly evident to

the senses and the mind.

Plewak next contends that the court erred in admitting testimony concerning his other alleged misconduct involving fires or arson. We find no merit in this contention. The testimony in question was presented only in passing to explain why an investigator questioned Plewak concerning the fires. It is evident from the record that the court did not otherwise consider it.

We find no merit in Plewak's next contention: that the court erred in admitting a fire communication report form as a business record. Business records are properly admissible when they are relevant, introduced by a qualified custodian who can testify as to their identity and preparation, and made in the regular course of business at or near the time of an event, and if the court believes the source, method and time of preparation were such as to justify their admission. RCW 5.45.020; *State v. Finkley*, 6 Wn. App. 278, 492 P.2d 222 (1972).

The report in question was introduced through the supervisor of the fire department's communications division, the officer responsible for the dispatchers who completed the form. The form was identified and its function and preparation explained; these matters were subject to voir dire by defense counsel. The court properly found that the form met the requirements for admission as a business record.

Plewak also contends that the word "arson" written into a box on the form's face is fatal to its admission. This objection was not raised below; we will not consider it. RAP 2.5(a).

Finally, Plewak contends that the evidence was insufficient to support conviction on count 1 of the amended information (the second fire). We disagree.

Sufficiency of the evidence is determined by viewing the record in the light most favorable to the State and asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980). Arson is

a crime most often proven by circumstantial evidence. It is a crime of particularly secret preparation and commission, and the State can seldom produce witnesses to the actual setting of such a fire. *Young*, 87 Wn.2d at 137. Nevertheless, a "well–connected train of circumstances may be as satisfactory as an array of direct evidence" in proving the crime of arson. *Young*, 87 Wn.2d at 137.

The evidence exclusively concerning the second fire was as follows: Plewak left the Allen house on the evening of the fire, was gone for approximately half an hour, smelled strongly of smoke on his return, and admitted to Mrs. Allen that he had been to the fire. Mrs. Allen first heard sirens and trucks after she let Plewak back into the house. Plewak contends that these circumstances, suspicious as they are, do not amount to the "well–connected train of circumstances" that would permit a rational trier of fact to find him guilty beyond a reasonable doubt. We might agree had that been the only evidence, but it was not.

■ The court also had before it all of the evidence concerning the Allen fire, including Plewak's confession. It could not help but notice that the modus operandi was identical. The court was entitled to consider the Allen fire evidence as relevant to motive, opportunity, intent, preparation, plan, knowledge and identity concerning the second fire. *See* ER 404(b); *State v. Evans*, 45 Wn. App. 611, 615, 726 P.2d 1009 (1986).[5] We are satisfied that the evidence as a whole was sufficient to support conviction on count 1.

Affirmed.

REED, C.J., and ALEXANDER, J., concur.

---

[5]Here, it was not necessary for the court to undergo the analysis required by *State v. Saltarelli*, 98 Wn.2d 358, 655 P.2d 697 (1982). *See Evans*, 45 Wn. App. at 615. Inasmuch as no severance had been requested and both counts were tried together, all of the evidence was before the court without objection.