[No. 17175-9-II. Division Two. July 10, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. GARITH EVART CLARK, SR., *Appellant*.

472

*Craig Andrew Ritchie,* of *Doherty Ritchie & Cruikshank,* court-appointed, for appellant.

*Robert William Strohmeyer, Deputy Prosecuting Attorney,* for respondent.

HOUGHTON, J. — Garith Evart Clark, Sr., appeals from a conviction of first-degree arson, contending that the trial court erred in excluding evidence implicating another suspect and that the evidence of malice was insufficient. Because we find the excluded evidence implicating another sufficient to meet and neutralize or overcome the State's evidence, we reverse and remand.

## FACTS

This case concerns the circumstances surrounding a fire that occurred on July 16, 1992, in a house at 934$^1$/$_2$ East Caroline Street in Port Angeles. Clark rented the house for use as a business office and counseling center. A neighbor noticed a fire in the house between 11:00 and 11:30 p.m. On August 19, 1992, Clark was charged by information with first-degree arson.

Clark argued in defense that the fire was set by his girlfriend's estranged husband, Doug Arrington. Clark believed Arrington was carrying out a campaign to have Clark's counseling license revoked by the State. Clark also asserted that Arrington believed Clark had molested Arrington's 15-year-old daughter.

Before trial, the State moved in limine for an order preventing Clark from referring to Arrington. Following extensive colloquy regarding the nature of the evidence against Arrington, the trial court granted the State's motion, barring all testimony or references about Arrington's activity connected with the arson. After this ruling, counsel for the State and Clark stipulated on the record that the following evidence would constitute Clark's pretrial offer of proof:[1]

(1) Arrington's motive, *i.e.,* his belief Clark had an affair with his wife and molested his daughter;

(2) Arrington's admission he called the telephone company two days before the fire and, misrepresenting himself as Clark, had Clark's telephone shut off one day before the fire;[2]

(3) Arrington's note, which was obtained by his former wife, with the fire marshall's telephone number on the front and Clark's business telephone number on the back;[3]

(4) Arrington's whereabouts were unknown between approximately 9:15 and 10:30 p.m., when the fire may have been started, and, even if his alibi[4] is accepted, he nonetheless had time to set the fire and meet with his alibi witness;

(5) Arrington's obsession with damaging Clark;

---

[1] The parties also stipulated regarding various evidence the State would offer to rebut Clark's evidence; such rebuttal evidence goes to the weight to be given the evidence by the jury, rather than to admissibility, so we need not address it here.

[2] Clark argues this evidence suggests (1) that Arrington had the telephone shut off to disable a fire alarm that might be connected by telephone to the fire department (although the building did not have such an alarm, fire officials would testify that most local fire alarms are so connected); and (2) that Arrington was attempting to frame Clark by leading the police to believe Clark had turned off the telephone one day before the fire because he knew what was going to happen.

[3] Clark asserted this evidence shows Arrington's preparation; i.e., gathering information on how to turn off fire alarms.

[4] In her deposition prior to trial, Jenno Schuler testified Arrington was with her at Port Williams beach, east of Sequim, from 11:00 p.m. to at least 12:00 p.m., on the evening of the fire. The fire was first observed between 11:00 and 11:30 p.m.

(6) Arrington's complaints to law enforcement and letters to DSHS alleging Clark was having an affair with his wife and molesting his daughter;

(7) Arrington's actively working with the Department of Licensing to have Clark's counseling license suspended;

(8) Arrington's call to the licensing department two weeks before the fire, suggesting seizure of Clark's records immediately because he might try to destroy them;

(9) Arrington's numerous other attempts to discredit Clark in the local community, through contacts with the Better Business Bureau, school, the Department of Health, and the local newspaper;

(10) Arrington's statement to Clark's ex-wife, Tamara Sharp, that it was "too bad" Clark was in jail for something he did not do;

(11) Arrington's statement to his ex-wife that he had learned how to set fires without detection while in the military, and she had better "watch it", noted in a restraining order she filed against Arrington within two months prior to the fire;

(12) Firefighters responding to the fire found a broken window.

During its case in chief, the State presented evidence the fire was caused by arson, through Port Angeles Fire Captain Terry Reid, Port Angeles Fire Marshall Bruce Becker, and fire investigator Jack Munger. Out of the presence of the jury, defense counsel argued that Munger's opinion was based upon statements Clark made to other fire officials regarding his suspicion that Arrington set the fire. The trial court declined to allow questioning about Clark's statements absent a foundation that Munger relied upon Clark's statements regarding Arrington. Munger testified, however, that Clark did not mention suspecting Arrington of setting the fire.

Randy Hynek, a claims representative with Farmers Insurance, testified Clark gave him a recorded statement on July 20, 1992, in which Clark stated that he owned the counseling business, that he was insured through Farmers, and that he had filed a claim for losses from the fire.

Hynek further testified that during the statement Clark said he was at the office at 8:00 p.m. on the evening of the fire, breaking down a fish tank to take it home. Clark also told Hynek the amount of his gross income, that his credit cards had been "maxed out", that he was divorced, and that his business was somewhat slow at the time of the fire.

After the State rested its case, defense counsel moved for a mistrial, contending that Clark had been unable to present his defense that another person set the fire. The motion was denied. The defense also made an offer of proof, consisting of the above noted information, and the following:

(1) Arrington told both Clark's ex-wife and her boyfriend he was the reason Clark was in jail;

(2) Arrington's truck was seen by Clark's neighbors going up the driveway to Clark's house twice within two weeks prior to the fire;

(3) Arrington's notes, taken by his ex-wife, indicating he was keeping track of Clark's whereabouts;

(4) Arrington told Tammy Sharp "sometimes somebody has to get busted for something they didn't do so they can get busted for something they did do".

(5) Clark accused Arrington of setting the fire 1 day after the fire, both to insurance investigators and to the fire department.[5]

Clark then presented Shawn Arrington, Doug Arrington's former wife and Clark's former girlfriend, and her 16-year-old daughter, who both testified that Clark was at their home the evening of the fire from 10:00 p.m. until the next morning.

Clark was convicted of first-degree arson. The trial court denied his motions for a new trial and for judgment notwithstanding the verdict, both of which were based upon the trial court's refusal to allow the evidence regarding Arrington. Clark appeals.

---

[5]Clark argued this information would rebut the State's assertion he said the fire was accidental.

██ Clark first argues the trial court erred by excluding all the evidence linking Arrington to the arson. A criminal defendant has a constitutional right to present all admissible evidence in his defense. *State v. Rehak,* 67 Wn. App. 157, 834 P.2d 651 (1992), *review denied,* 120 Wn.2d 1022, *cert. denied,* 113 S. Ct. 2449 (1993). Evidence is admissible when relevant (i.e., when it has "any tendency to make the existence of any fact . . .of consequence . . . more . . . or less probable" (ER 401)), provided other rules do not preclude its admission. ER 402.

██ Here, it appears the trial court believed admission of this evidence was precluded by the rule stated in cases such as *Rehak* and *State v. Mak,* 105 Wn.2d 692, 716, 718 P.2d 407, *cert. denied,* 479 U.S. 995 (1986). Admissibility lies within the sound discretion of the trial court; its determinations will not be reversed absent an abuse of discretion. *See Rehak,* 67 Wn. App. at 162. Such abuse occurs when, considering the purposes of the trial court's discretion, it is exercised on untenable grounds or for untenable reasons. *Coggle v. Snow,* 56 Wn. App. 499, 507, 784 P.2d 554 (1990).

██ Moreover, the defendant's right to present such a defense is not unfettered. *Rehak,* at 162 (citing *State v. Drummer,* 54 Wn.App. 751, 755, 775 P.2d 981 (1989)). Rather, when a defendant seeks to introduce evidence connecting another person with the charged crime, a proper foundation must be laid:

> Before such testimony can be received, there must be such proof of connection with the crime, such a train of facts or circumstances as tend clearly to point out someone besides the accused as the guilty party.

(Citations omitted in *Mak.*) *Mak,* 105 Wn.2d at 716 (*quoting State v. Downs,* 168 Wash. 664, 667, 13 P.2d 1 (1932)).[6]

---

[6]*Mak* involved a murder defendant's attempt to introduce evidence regarding a third person whom the defendant alleged was an *accomplice* to the crime. Although a significant amount of evidence linked the third person to the crime, such evidence is only relevant to show someone *besides* the accused committed

Mere evidence of another party's motive, or motive coupled with threats by such other person, is inadmissible, unless coupled with other evidence tending to connect such other person with the actual commission of the crime charged. *State v. Kwan,* 174 Wash. 528, 533, 25 P.2d 104 (1933) (citing *People v. Mendez,* 193 Cal. 39, 223 P. 65 (1924)); see also *State v. Myers,* 12 Wash. 77, 79, 40 P. 626 (1895) (evidence of other person's whereabouts inadmissible absent foundational circumstances connecting other person with the arson).

In *Rehak,* we held that the murder defendant failed to lay a foundation supporting her defense that her son had committed the murder. The defendant admitted she was nearby when her husband was shot; the evidence (absence of tracks in the snow) indicated that she must have been alone in the house with her husband and that no one else could have gone in or out of the house. While her son conceivably could have driven to the scene of the crime from several counties away, there was no evidence that he took a step to act on that possibility. *Rehak,* 67 Wn. App. at 163. Rather, all the evidence presented was to the contrary.

A similar situation arose in *Drummer.* The State presented evidence (1) that the defendant admitted to his friends he robbed and killed the victim and (2) that the defendant was in possession of items stolen from the victim. The defendant attempted to introduce evidence that several other persons had a motive to kill the victim; he failed, however, to present any evidence directly linking the other persons to the facts of the crime. *Drummer,* 54 Wn. App. at 755.

Cases such as *Rehak* and *Drummer* indicate that the defendant cannot attempt to rebut the State's case with insufficient evidence that someone else committed the crime. By contrast, if the prosecution's case against the

the crime; therefore, the *Mak* court affirmed the trial court's refusal to admit the evidence because it was "neither relevant [to] nor probative" on guilt or punishment. 105 Wn.2d at 716-18.

defendant is largely circumstantial, then the defendant may neutralize or overcome such evidence by presenting sufficient evidence of the same character tending to identify some other person as the perpetrator of the crime. *See Leonard v. The Territory of Washington,* 2 Wash. Terr. 381, 396, 7 P. 872 (1885).

In *Leonard,* a murder defendant laid a proper foundation supporting his defense that someone else committed the crime. He showed that another person with a motive to kill the victim "resided in the vicinity of the homicide" on the day in question, and had previously threatened to kill the victim. *Leonard,* at 384. The prosecution's case against the defendant was circumstantial. *Leonard,* at 383. The Supreme Court held that when faced with such evidence, the defendant may respond with similar circumstantial evidence that another person committed the crime. *Leonard,* at 396.[7]

In the present case, as the State noted in its closing argument, the evidence against Clark was entirely circumstantial.[8] His alleged motive was insurance proceeds.[9] Although he was at his office the night of the fire and removed a fish tank, two witnesses said he was with them at least one hour prior to the time the fire was first observed. While this evidence is not insufficient to support a conviction, no evidence linked Clark directly to the fire.

Similar evidence indicates that Arrington had the motive, opportunity, and ability to commit the arson. Arrington's alleged motive was revenge against Clark for

[7]On the other hand, absent a foundation showing some connection of the other person to the crime beyond mere ill will, evidence of the other's whereabouts is inadmissible. *See Meyers,* 12 Wash. at 79.

[8]In its brief to this court, the State asserts the evidence against Clark "is overwhelming". While we do find the evidence sufficient, it does not appear to be "overwhelming", particularly in light of the excluded evidence regarding Arrington.

[9]Although it is clear that as a renter Clark only could have hoped to recover the replacement value of the items destroyed in the office fire, he also had coverage for loss of income. The State argued Clark was deeply in debt, was in arrears on child support payments, and was suffering a slow-down in his business.

having an affair with his wife and, Arrington believed, molesting his daughter. Arrington had the opportunity to set the fire because his vehicle was seen near the house prior to the fire and because, although he had a similar alibi to Clark's, he nonetheless may have had time to drive to his meeting after setting the fire.[10] Clark also sought to offer evidence that Arrington had previously threatened to set his former wife's house afire and that he had told her he knew how to commit arson without being detected. Like Clark, while no evidence directly linked Arrington to the fire, this evidence nonetheless provides a trail of evidence sufficiently strong to allow its admission at trial.

The ultimate purpose of the trial court's discretion in admitting or excluding evidence is to assure "that the truth maybe ascertained and proceedings justly determined." ER 102. In light of this purpose, we reverse and remand for a new trial, in which the jury should be allowed to determine the weight and credibility of Clark's evidence regarding Arrington.[11]

Clark also contends the State did not prove an element of arson: that he acted with malice. We address this issue because it is likely to recur at retrial. Under RCW 9A.48 .020, a person is guilty of first-degree arson if he "knowingly and maliciously":

(a) Causes a fire . . . manifestly dangerous to any human life, including firemen; or

. . .

(d) Causes a fire . . . on property valued at ten thousand dollars or more with intent to collect insurance proceeds.

---

[10]This case is distinguishable from *Rehak* on this point because Arrington took affirmative steps against Clark, indicating he intended to harm him: Arrington had Clark's phone shut off the day before the fire, accused him of various crimes, and instigated a campaign to have Clark's counseling license revoked.

[11]Clark assigns error to the trial court's "undue" restriction of cross-examination, but makes no argument on this point. It appears from the record that the trial court imposed such restrictions based upon its initial ruling in limine barring evidence regarding Arrington. We obviously will not make prospective evidentiary rulings, which we leave, as always, to the sound discretion of the trial court.

RCW 9A.48.020.

Pursuant to RCW 9A.04.110(12), malice includes acts,

design[ed] to vex, annoy, or injure another person. Malice may be inferred from an act done in wilful disregard of the rights of another, or an act wrongfully done without just cause or excuse . . ..

Clark essentially argues the State's evidence could only prove he intended to collect insurance, not that he acted with malice. We disagree.

The State proffered circumstantial evidence that Clark intentionally set fire to his office. From this, malice may be inferred. *See State v. Plewak*, 46 Wn. App. 757, 763, 732 P.2d 999 (1987) (inference of malice proper where defendant deliberately set two fires); *State v. Simmons*, 28 Wn. App. 243, 247, 622 P.2d 866 (1980) (malice may be inferred beyond a reasonable doubt where defendant deliberately set fire). Moreover, the State proffered evidence Clark attempted to collect insurance proceeds. This, taken together with the other evidence, allows an inference Clark intended to collect insurance proceeds due to the fire. Thus, the State's evidence was sufficient to prove both malice and intent to collect insurance proceeds.

Clark makes further assignments of error that we need not address in light of our disposition of this case.

Reversed and remanded.

SEINFELD, C.J., and WIGGINS, J., concur.

Review denied at 128 Wn.2d 1004 (1995).