# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | | |
|---|---|---|
| STATE OF WASHINGTON, | | No.  45959-1-II |
| | Respondent, | Consolidated with<br>No.  46848-4-II |
| v. | | |
| CONLAN JADEN SHAW, | | UNPUBLISHED OPINION |
| | Appellant. | |
| In the Matter of the<br>Personal Restraint Petition of | | No.  46848-4-II |
| CONLAN JADEN SHAW, | | |
| | Petitioner. | |

WORSWICK, J. — Conlan Shaw appeals his juvenile court adjudications of first degree arson, residential burglary, and first degree malicious mischief.  Shaw argues that the State produced insufficient evidence to prove he (1) caused the fires inside the residence, (2) acted maliciously, (3) entered the residence with the intent to commit a crime therein, or (4) caused property damage in an amount exceeding $5,000.  Shaw also challenges his adjudications in a consolidated personal restraint petition (PRP) arguing his counsel was ineffective for failing to call an available alibi witness.

Because sufficient evidence supports Shaw's convictions and because his attorney was not ineffective, we affirm Shaw's adjudications, and deny Shaw's petition.

FACTS

On June 20, 2013, between 8:30 AM and 9:00 AM, next door neighbor Mary Casey heard glass breaking from inside the house next door. According to Casey, these noises continued until Tacoma Police Officer James Pincham arrived outside the house just after noon.

Officer Pincham responded to the residence after a 911 caller reported hearing sounds of breaking glass at the residence. Upon arriving at the residence, Officer Pincham observed several broken windows and two metal dining room chairs in the driveway that appeared to have been thrown from the residence's window. As Officer Pincham approached the residence, he noticed the smell of smoke coming from inside the house and called for Tacoma Fire Department to be dispatched. Upon entering the residence, Officer Pincham found extensive vandalism throughout the home. He determined the likely point of entry into the home was through a window in one of the lower bedrooms. The screen from that window had been removed and the glass was shattered. Blood evidence was found on the window's interior and exterior frames.

In the hallway just outside of the first bedroom, the officers found two areas where apparent blood evidence had been smeared on the walls as Shaw worked his way through the residence. Later testing matched the DNA (deoxyribonucleic acid) from the blood at the scene to Shaw.

Three fires had been started in separate areas of the residence. First, inside the second bedroom on the home's lower level, Officer Pincham found a pile of burning toilet paper on the carpet. An investigator found a fingerprint matching Shaw's fingerprint on a piece of broken window glass in that room.

2

Second, in the lower level bathroom, a burned roll of toilet paper was found resting on the floor directly beneath the toilet paper holder. The bathroom exhibited significant damage.

Third, a fire burned in the family room of the residence's lower level. When Officer Pincham entered the family room, an approximately eight-by-five-foot burned area of the carpet was still smoldering.

Arson investigator, Kenneth Hansen, investigated the three fires inside the house. It was Hansen's opinion that the fires were intentionally set based on their nature, origins, and multiple locations throughout the lower level, plus the lack of any other source of natural or accidental ignition and the degree and volume of other contemporaneous damage throughout the house.

There was damage throughout the rest of the house. Soot and smoke blackened the walls, and broken glass covered the floors from shattered windows, light fixtures, a bathroom mirror, and a glass table. In the kitchen, the refrigerator was tipped over and dented. The upstairs bathroom mirror was shattered and the light/fan fixture broken. Several floor lamps were knocked over and destroyed. A fingerprint collected from one of the broken floor lamps matched Shaw's. One additional fingerprint collected at the residence remains unidentified.

Esther Mbajah and her husband own the residence. The residence was used as a rental house and several people other than Shaw, including Mbajah and her real estate agent, were frequently inside. Mbajah habitually checked on the residence every morning on her way to work. When she drove by the house around 7:30 AM on the morning of June 20, the windows were intact and no debris lay in the driveway. Mbajah had been inside the house one or two days

3

prior and saw no damage. Following the fire, Mbajah spent well over $5,000 to repair the residence.

The State charged Shaw with first degree arson, residential burglary, and first degree malicious mischief. Prior to trial, Shaw and his grandmother, Nancy Pringle, met with Shaw's court appointed attorney. At that meeting Pringle informed counsel that Donald Spencer would be available to testify that he was with Shaw from 10:00 AM until 2:00 PM on the day of the events in question. Spencer states, "I woke Conlan up when I came over around 10:00 AM. Conlan ate as we talked about what I needed from him. He used the computer to look up information for me, mostly employment possibilities." PRP (App. C).

Spencer attended every day of the trial, but counsel chose not to call Spencer as a witness. Pringle states that when she told counsel she wanted Spencer to testify, counsel told her to "sit down and be quiet because the prosecutor didn't have a case." PRP (App. B). At the close of the State's case in chief defense rested. Pringle states that Shaw's counsel told her the State "didn't have any evidence" and there was "no way they can prove arson in the first degree, so all charges would be dropped." PRP (App. B).

Following the bench trial on January 28, 2014, the juvenile court found that Shaw had committed all three charges. Shaw appeals his adjudications and also petitions to be released from personal restraint.

4

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Shaw argues that the State produced insufficient evidence to support his adjudications because the State did not prove that Shaw (1) was at the house at the relevant time, (2) started fires or caused substantial damage at the residence, or (3) acted maliciously. We disagree.

To determine whether sufficient evidence supports an adjudication, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the crime's elements beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). Specifically, following a bench trial, our review is limited to determining whether substantial evidence supports the challenged findings of fact and, if so, whether the findings support the conclusions of law. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005).

We treat unchallenged findings of facts as verities on appeal. *Stevenson*, 128 Wn. App. at 193. Shaw does not assign error to any of the juvenile court's findings of fact. Therefore, we look only to see whether the juvenile court's findings of fact support its conclusions of law. We review challenges to a trial court's conclusions of law de novo. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

A. *First Degree Arson*

Shaw offers two arguments to challenge his adjudication for first degree arson. First, Shaw argues that the State failed to produce sufficient evidence to prove that he was present in the home at the time the fires started, or that he caused the fires within the residence.

Alternatively, Shaw argues that even if the State proved he started the fires, there is insufficient evidence to find that he did so maliciously. We disagree.

A person is guilty of first degree arson if he knowingly and maliciously causes a fire or explosion which damages a dwelling. RCW 9A.48.020. Shaw does not dispute that someone caused the fires which damaged a dwelling. He argues only that the State was unable to prove that he maliciously caused the fires.

Arson is a crime of particularly secret preparation and commission, and the State can seldom produce witnesses to the actual setting of the fire. *State v. We*, 138 Wn. App. 716, 729, 158 P.3d 1238 (2007); *State v. Plewak*, 46 Wn. App. 757, 764-65, 732 P.2d 999 (1987). Thus, arson is a crime most often proven by circumstantial evidence. *We*, 138 Wn. App. at 729. We consider direct evidence and circumstantial evidence equally reliable. *State v. O'Meara*, 143 Wn. App. 638, 643, 180 P.3d 196 (2008).

1. *Shaw Was Present At the Relevant Time and Caused the Fires*

Shaw does not contest that his DNA and fingerprints were found at the point of entry, throughout the residence, and near all three fires. But Shaw argues that this evidence shows only that he was present at the scene at some point, not that he caused any fires or was present when the fires started. Additionally, he points to the one unidentified fingerprint found in the house as evidence that someone else may have caused the damage and started the fires.

In reviewing the sufficiency of the evidence, we take all evidence and inferences in the light most favorable to the State, not to Shaw. And the evidence and inferences prove that Shaw was at the home and caused the fires.

6

The uncontested findings of fact provide physical and temporal evidence that the property damage and fires were contemporaneous. When Mbajah drove around the house on her way to work around 7:30 AM the house was not damaged. Shortly thereafter, next door neighbor Casey heard sounds of excessive breaking glass from inside the house. The sounds of breaking glass and destruction heard by Casey was consistent with the damage found inside the home. Two of the three fires were still smoldering when Officer Pincham entered the house, indicating that they had been recently set. Furthermore, the DNA and fingerprint evidence collected from the scene tie Shaw to the damage. Shaw's fingerprint and DNA were found on the broken window entry point to the house. Shaw's blood and fingerprints were also found near the fires.

The juvenile court's findings provide a compelling circumstantial case supporting the conclusion that Shaw was present at the home and caused the fires. And because circumstantial evidence is as reliable as direct evidence, Shaw's arguments fail.

2. *Shaw Acted Maliciously*

Shaw argues alternatively that the State failed to prove he maliciously caused the fires, and that, at most, he committed only reckless burning. Again, we disagree.

Arson investigator Hansen, determined that the fires were intentionally set based on the fires' nature, origins, and multiple locations throughout the lower level, plus the lack of any other source of natural or accidental ignition and the degree and volume of other contemporaneous damage throughout the house. A trial court may infer malice when the State provides circumstantial evidence that a defendant intentionally caused a fire. *State v. Clark*, 78 Wn. App.

7

471, 481, 898 P.2d 854 (1995). The juvenile court's unchallenged findings support its conclusion that Shaw knowingly and maliciously caused the fires. Shaw's arguments fail.

B.     *Residential Burglary*

Shaw argues that the State failed to produce sufficient evidence to prove his intent to commit a crime against a person or property within the residence. We disagree.

A person is guilty of residential burglary if the person enters or remains unlawfully in a dwelling with the intent to commit a crime against a person or property therein. RCW 9A.52.025. An individual's intent may be inferred if his conduct and the surrounding facts and circumstances indicate such intent as a matter of logical probability. *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013).

In determining Shaw unlawfully entered the residence and had the intent upon entry or while remaining in the residence to commit a crime against the property of another, the juvenile court found (1) Shaw never had permission to be in the home or to cause any of the damage, (2) the DNA and fingerprint evidence proves Shaw unlawfully entered the residence by breaking a window, and (3) the fingerprint evidence found on the broken floor lamp and a piece of broken window glass proves that, once inside the house, Shaw continued to damage the property. These unchallenged findings of fact are sufficient to support the juvenile court's conclusion that Shaw unlawfully entered the residence with the intent to commit a crime and therefore committed residential burglary.

C.      *First Degree Malicious Mischief*

Shaw argues that insufficient evidence supports his adjudication for malicious mischief because "[n]o evidence establishes any significant level of property damage having been done while appellant was at the residence," and he points to the one unidentified fingerprint as evidence that someone else may have caused the damage. Am. Br. of Appellant at 14. We disagree.

A person is guilty of first degree malicious mischief if he knowingly and maliciously causes physical damage to the property of another in an amount exceeding five thousand dollars. RCW 9A.48.070. As we discussed above, the juvenile court found, and Shaw does not contest, that Shaw's blood and fingerprints were identified at the point of unlawful entry and throughout the home, including on the damaged property. Shaw is asking us to reweigh the evidence in his favor, but we view the evidence in the light most favorable to the State. One unidentified fingerprint found on a floor lamp does not negate the uncontested findings of fact supporting the trial court's conclusion that Shaw knowingly and maliciously caused physical damage to the property. Our review is limited to whether the juvenile court's findings of fact support its conclusions of law. *Stevenson*, 128 Wn. App. at 193. Here, we conclude that they do. Shaw's argument fails.

To summarize, we hold that the juvenile court's uncontested findings support the court's conclusions that Shaw committed first degree arson, residential burglary, and first degree malicious mischief. We now turn to Shaw's personal restraint petition.

9

II. PERSONAL RESTRAINT PETITION

A.    *Ineffective Assistance of Counsel*

Shaw argues his trial counsel was deficient for failing to call Donald Spencer as an alibi witness. We disagree.

Generally, to prevail on a collateral attack on a judgment and sentence by way of a personal restraint petition, a petitioner must first establish that a constitutional error has resulted in actual and substantial prejudice or that a nonconstitutional error has caused a complete miscarriage of justice. *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 212, 227 P.3d 285 (2010). However, "if a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012). Although Shaw need not show more prejudice on collateral attack than on direct appeal, he must satisfy the *Strickland*[1] test to have his personal restraint petition granted. *Crace*, 174 Wn.2d at 846-47.

To prevail on an ineffective assistance of counsel claim, the petitioner must show both deficient performance and resulting prejudice. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). If a petitioner fails to establish either prong of the ineffective assistance of counsel test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To show

---

[1] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

deficient performance, the petitioner must show the absence of any conceivable legitimate tactic supporting counsel's action. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Our scrutiny of counsel's performance is highly deferential; it strongly presumes reasonableness. *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. Because ineffective assistance of counsel claims present mixed questions of law and fact, we review them de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001).

Shaw argues that his trial counsel was ineffective for failing to call Donald Spencer as an alibi witness. Generally, an attorney's decision to call a witness to testify is "a matter of legitimate trial tactics," which "will not support a claim of ineffective assistance of counsel." *State v. Kolesnik*, 146 Wn. App. 790, 812, 192 P.3d 937 (2008). There are a number of reasons counsel may decide whether to call a particular witness. The ultimate decision requires the attorney to evaluate the strength of the witness testimony in light of the witness's credibility and the strategy of the case. If defense counsel's actions go to the theory of the case, we will not find ineffective assistance of counsel. *State v. Varga*, 151 Wn.2d 179, 199, 86 P.3d 139 (2004).

The affidavit from Shaw's grandmother shows that counsel's decision not to call Spencer as a witness was a tactical one. "She told me to sit down and be quiet because the prosecutor didn't have a case. . . . She said that the prosecutor didn't have any evidence." PRP (App. C). Counsel's strategy appeared to be to argue that the State had not met its burden of proof.

Moreover, the physical evidence worked against an alibi defense. Shaw concedes his blood and fingerprints were found on the broken window entry point to the house, inside the home near the fires, and on the damaged property inside the house. Spencer's anticipated

11

testimony could have done nothing to explain why Shaw's blood and fingerprints were found on broken windows throughout the house, which had been seen intact that very morning. It is likely counsel recognized this and did not want to undermine her strategy. We hold that counsel's decision not to call Spencer as a witness was tactical and was therefore not deficient.

Shaw's trial attorney made a tactical decision in not calling Spencer as an alibi witness. Although counsel's strategy was unsuccessful, her tactical decision did not fall below an objective standard of reasonableness. Consequently, we deny Shaw's personal restraint petition.

In conclusion, we affirm Shaw's adjudications and deny Shaw's petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Melnick, J.