

**FILED**
**APRIL 11, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38536-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| YEVGENIY ALEKSEEVICH DYFORT, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Yevgeniy Dyfort challenges the sufficiency of evidence to convict him of second degree assault with a deadly weapon and first degree arson. After reviewing the trial testimony, we find sufficient evidence. We affirm his convictions.

FACTS

Because Yevgeniy Dyfort challenges the sufficiency of the evidence presented at trial, we relate the facts in the light most favorable to the State, although we also mention some testimony favorable to Dyfort. This prosecution arises from an attack on Galina Babich by Dyfort on March 10, 2021.

Yevgeniy Dyfort and Galina Babich enjoyed a dating relationship. On the night of March 10, 2021, as the couple drank alcohol in Babich's apartment, the couple talked about Babich engaging in sex with Dyfort's brother, Oleg. The discussion enraged

Dyfort. He screamed that he wanted to kill his brother. Babich unsuccessfully attempted to calm Dyfort.

In response to Galina Babich's efforts to allay Yevgeniy Dyfort's fury against his brother, Dyfort redirected his rage toward Babich. Dyfort assaulted Babich for two hours. Dyfort struck Babich on her head and face, pulled her hair out, pushed her to the ground, and kicked her. During this window of time, Dyfort inflicted numerous injuries on Babich including three stab wounds.

At trial, Galina Babich could not definitively describe the object that Yevgeniy Dyfort employed to stab her. She had not seen Dyfort retrieve the object. Dyfort held the object in the palm of his hand, so Babich could not see its entirety. Nevertheless, she glimpsed a white and sharp object. She did not know if the object was a knife. The object could have been a half pair of scissors. At the time Dyfort wielded the weapon, he was "very angry." Report of Proceedings (RP) (Sept. 8, 2021) at 39. He yelled that he would kill Babich. After being stabbed, Babich attempted to flee the apartment with the result of her blood being splattered throughout the residence.

During his two-hour assault on Galina Babich, Yevgeniy Dyfort ignited two fires in Babich's apartment. He first lit a living room curtain on fire. The fire was small, and Babich quickly extinguished the curtain fire with a towel.

Yevgeniy Dyfort next lit a pair of his shorts on fire. While holding the overheated shorts in front of Galina Babich, Dyfort looked at Babich and said "I'm going to ignite it

2

now, and you're not going to leave from here." RP (Sept. 8, 2021) at 45. The burning shorts triggered the apartment's fire alarm, which gave Babich an opportunity to flee Dyfort as the loud noise distracted him.

Galina Babich exited her apartment and ran to her daughter Viktoria Stovaba's apartment in a building nearby. Stovaba called the emergency responders. Spokane police officers, firefighters, and emergency medical providers arrived at Stovaba's residence. Medical first responders examined Babich, assessed her injuries, and prepared her for transport to a hospital for further evaluation.

Paramedic Robert Nixon testified at trial as to the wounds he saw on Galina Babich. Nixon observed a split lip, a lump on her scalp, a minor horizontal laceration on the neck, and a laceration on the thigh. Nixon did not deem the injuries life threatening.

At the hospital emergency room, the treating physician, Dr. Christopher Romey, observed contusions on Galina Babich's right cheek, left eyebrow, upper lip, left knee, and left forearm. Romey also saw stab wounds to the right temple, the left anterior neck, and left thigh. The wound to the temple was not bleeding, but Babich suffered considerable swelling and pain in the area. The wound to the left anterior neck ran one centimeter in length and required stitches. Dr. Romey did not measure the depth of the neck laceration because of possible complications resulting from measuring. The neck did not bleed, so he assumed the wound was "not terribly, terribly deep." RP (Sept. 9,

2021) at 17. Romey agreed with paramedic Robert Nixon that Babich's wounds did not threaten her life.

After Galina Babich escaped her apartment, Yevgeniy Dyfort stole her car. Later that night law enforcement found Dyfort with Babich's car and arrested him. Police discovered a cigarette lighter in Dyfort's possession.

During a search of Galina Babich's vehicle after Yevgeniy Dyfort's arrest, police officers located Babich's wallet wrapped tightly in a bedsheet and a pair of scissors with a black handle. The scissors did not match the description Babich gave the police of the sharp object Dyfort used to repeatedly stab her. She described the object as being small with a white handle, possibly a half pair of scissors. Police also recovered a knife from Babich's apartment, but the knife tested negative for blood. Law enforcement never found the sharp object that created the wounds.

Law enforcement retrieved the burned, but water-soaked, shorts from Galina Babich's apartment's bathtub and seized the burned curtain. Detective March Melville, who examined the curtain, testified at trial:

> Q. Okay. And you said these curtains, what did the burn look like?
> A. Just melted, it didn't appear to have been actively burning at any point. It appeared that it had been, at least, attempted to have been burnt, and it had indications of burning on the bottom edge.

RP (Sept. 9, 2021) at 91.

4

PROCEDURE

The State of Washington charged Yevgeniy Dyfort with first degree arson, second degree assault with a deadly weapon, harassment, unlawful imprisonment, first degree robbery, and theft of a motor vehicle. At the end of trial, Dyfort moved to dismiss all charges against him on the ground of insufficient evidence. The trial court dismissed the first degree robbery charge. A jury found Dyfort guilty on the remaining charges.

LAW AND ANALYSIS

On appeal, Yevgeniy Dyfort argues that the State failed to introduce evidence that proves beyond a reasonable doubt he committed second degree assault with a deadly weapon and first degree arson. He does not challenge his convictions for harassment, unlawful imprisonment, and theft of a motor vehicle. We appraise the evidence for second degree assault and first degree arson separately.

When reviewing the sufficiency of evidence, we determine whether, while viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Embry*, 171 Wn. App. 714, 742, 287 P.3d 648 (2012). Sufficiency challenges admit the truth of the State's evidence and all reasonable inferences drawn from it. *State v. Embry*, 171 Wn. App. 714, 742 (2012). In analyzing the sufficiency of evidence, this court does not treat circumstantial evidence as less reliable than direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). This court defers to the trier of fact

5

with respect to issues concerning witness credibility, conflicting testimony, and the persuasiveness of evidence. *State v. Embry*, 171 Wn. App. 714, 742 (2012).

Second Degree Assault

When arguing the insufficiency of evidence for the second degree assault conviction, Yevgeniy Dyfort contends the State failed to prove the crime's element of use of a deadly weapon. Under RCW 9A.36.021(1):

> A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree.
>  . . . .
> (c) Assaults another with a *deadly weapon*.

(Emphasis added.) RCW 9A.04.110(6) defines a "deadly weapon" as:

> any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

Washington's definition of a "deadly weapon" creates two categories. *State v. Carlson*, 65 Wn. App. 153, 158, 828 P.2d 30 (1992). Category one includes weapons which are deadly per se: explosives and loaded or unloaded firearms. *State v. Carlson*, 65 Wn. App. 153, 158 (1992). Category two comprises any other weapon or instrument that can readily cause death or substantial bodily harm under the circumstances used. *State v. Carlson*, 65 Wn. App. 153, 158-59 (1992). Relevant circumstances include the intent and present ability of the user, the degree of force, the part of the body to which it

6

was applied, and the physical injuries inflicted. *In re Personal Restraint of Martinez*, 171 Wn.2d 354, 367-68, 256 P.3d 277 (2011); *State v. Skenandore*, 99 Wn. App. 494, 994 P.2d 291 (2000); *State v. Sorenson*, 6 Wn. App. 269, 273, 492 P.2d 233 (1972).

Yevgeniy Dyfort emphasizes that Galina Babich did not see the object that stabbed her because of the object being hidden in the palm of Dyfort's hand. We agree that Babich did not view the entire object, but she testified she saw part of the white, sharp object. Dyfort also highlights that the State never found the object. In addition, Dyfort asserts that Babich never suffered significant injury. He describes the lacerations as superficial and observes that Babich was not bleeding when arriving at the hospital. He underscores that both the paramedic and emergency room physician declined to characterize the injuries as life threatening. After emphasizing these facts, Dyfort argues that, with no evidence of the actual nature of alleged weapon, without the weapon itself, and without any significant injuries, the State presented insufficient evidence to convict.

Yevgeniy Dyfort successfully shows that the weapon he employed against Galina Babich did not cause death or substantial injury. But causation of death or substantial injury is not a necessary element of the crime. The weapon only need be readily capable of causing substantial harm.

The State also need not produce the weapon or provide a detailed description of the weapon to prove a deadly weapon. Evidence of a deadly weapon suffices if a witness to the crime testified to the presence of such a weapon. *State v. Tongate*, 93 Wn.2d 751,

754, 613 P.2d 121 (1980); *State v. Newman*, 4 Wn. App. 588, 595, 484 P.2d 473 (1971).

The evidence may be circumstantial; no weapon need be produced or introduced. *State v. Tongate*, 93 Wn.2d 751, 754 (1980); *State v. Slaughter*, 70 Wn.2d 935, 938-39, 425 P.2d 876 (1967).

We deem the Washington decision most parallel to Yevgeniy Dyfort's appeal to be the "pencil case," *State v. Barragan*, 102 Wn. App. 754, 9 P.3d 942 (2000). The jury convicted Miguel Barragan of possessing a "deadly weapon" when assaulting Steven Garcia, another jail inmate. The two started a fight. Barragan yelled to Garcia: "'You're gonna die'" and "'I'm gonna hit you tonight, don't even try to fall asleep.'" *State v. Barragan*, 102 Wn. App. 754 at 757. Barragan seized a pencil and swung it toward Garcia's left eye. Garcia blocked the first blow, but only partially blocked a second blow, which hit his temple. The pencil shattered, and one-half of the pencil embedded in Garcia's temple. The wound was not serious.

This court, in *State v. Barragan*, affirmed the finding of a deadly weapon. This court reasoned that the pencil could have pierced Steven Garcia's eye. Miguel Barragan accompanied the blow with the promise that Garcia would die. A reasonable person could infer that Barragan intended to commit great bodily harm.

Yevgeniy Dyfort relies on *State v. Skenandore*, 99 Wn. App. 494 (2000), Washington's second "pencil case." Inmate Neil Skenandore fashioned an ersatz spear from writing paper rolled into a rigid shaft bound with dental floss and affixed to a golf

8

score pencil. Skenadore stabbed a guard's torso through a port in his cell door as the guard delivered a meal. The weapon failed to tear the guard's shirt and only left pencil marks. The guard did not place his face near the port. The spear could not strike an eye.

Yevgeniy Dyfort used a sharp object that could have caused substantial injury if the object penetrated further into Galina Babich's neck. The object caused a laceration. Dyfort had access to Babich's entire body. The emergency room physician sutured the laceration, but did not pry as to its depth for fear of causing harm. Dyfort employed the sharp object during the course of a vengeful and raging two-hour attack. As he wielded the weapon, he yelled that he would kill Babich. Under these circumstances, a reasonable jury could conclude that Dyfort brandished a deadly weapon.

First Degree Arson

When arguing the State presented insufficient evidence to convict him of first degree arson, Yevgeniy Dyfort asserts that the evidence did not show that he acted with malice or that he caused a fire that qualifies for an arson charge because he did not set fire to Galina Babich's apartment. Under RCW 9A.48.020(1):

> [a] person is guilty of arson in the first degree if he or she knowingly and *maliciously*:
> (a) Causes a fire or explosion which is manifestly dangerous to any human life, including firefighters; or
> (b) Causes a fire or explosion which damages a dwelling; or
> (c) *Causes a fire or explosion in any* building in which there shall be at the time a human being who is not a participant in the crime; or
> (d) Causes a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance proceeds.

9

(Emphasis added.)

*Malice*

We address the element of malice first.  RCW 9A.04.110(12) defines "malice" as:

> an evil intent, wish, or design to vex, annoy, or injure another person.  Malice may be inferred from an act done in willful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a willful disregard of social duty

The trier of fact may infer malice when the accused deliberately sets a fire.  *State v. Plewak*, 46 Wn. App. 757, 763, 732 P.2d 999 (1987).  In *State v. Clark*, 78 Wn. App. 471, 898 P.2d 854 (1995), this court discovered sufficient evidence of malice the defendant intentionally set fire to his office.  In *State v. Plewak*, 46 Wn. App. 757 (1987), this court inferred malice as the record established the juvenile intentionally set two fires.  In *State v. Simmons*, 28 Wn. App. 243, 622 P.2d 866 (1980), this court concluded the accused acted with malice when he lit a fire with an accelerant liquid in the hallway outside of an apartment of man with whom he had fought earlier in the day.

The overwhelming facts show that Yevgeniy Dyfort intentionally lit curtains and his shorts.  These circumstances alone suffice to prove malice.  In addition, Dyfort grew enraged when he discussed his girlfriend rendezvoused with his brother.  Dyfort yelled that he intended to kill Galina Babich.  He placed the flaming shorts in front of Babich and told her she could not exit her apartment.

*In Any Building*

Yevgeniy Dyfort emphasizes the language of RCW 9A.48.020(1)(c), which demands that the accused "[c]auses a fire . . . in any building." He emphasizes that his shorts were never attached to the building or caused burns to a part of the building. Although Dyfort concedes that he melted the curtain, he argues that no evidence established that he set the curtain aflame.

We note that RCW 9A.48.020(1)(c) does not demand that the accused caused fire "to" a building or burn a building. The accused commits arson by starting a fire "in any building." Yevgeniy Dyfort ignited the shorts, while the shorts were inside the apartment. The flaming shorts could have spread to the apartment structure and contents.

Regardless of whether ignition of the shorts qualifies for arson in a building, Yevgeniy Dyfort also ignited a living room curtain. Dyfort emphasizes Detective Marc Melville's testimony that the curtain appeared not to have been actively burning at any point. The jury need not accept this testimony as a verity. Detective Melville also testified that the curtain showed some burning at the edge. Galina Babich testified that Dyfort lit the curtain on fire. The fact that the fire was small and easily extinguished does not disqualify the ignition of the curtain to be a "fire" for purposes of arson.

CONCLUSION

We affirm Yevgeniy Dyfort's convictions for second degree assault and second degree arson.

11

No. 38536-1-III
*State v. Dyfort*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, J.
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Staab, J.